# EXHIBIT A



## CUSTODIAN MANAGEMENT AGREEMENT

**Security Name:** Supply@Me Capital PLC

**Symbol:** SYME:LN

NOW, THEREFORE, for and in consideration of mutual premises provided or to be provided and other good and valuable, sufficient, and equitable consideration, monetary or in-kind, and other mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, provided for and satisfied, and intending to be bound hereby the performance thereof, and such represents reasonably just, equitable, adequate, and reasonable in value, the parties hereto covenant and agree to and stipulate as follows. That each Party agrees that the fair value of consideration it is receiving, has received and will receive under this Agreement equals or exceeds the fair value of the consideration it is delivering.

This Custodian Management Agreement (this "Agreement" or the "CMA") is entered into, effective on the date of execution hereof, by and between:

**1AF2 SRL**, for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at Via Giosue Carducci 36, Milan, Italy, 20123, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Borrower" or "Principal Account Holder");

AND

**America 2030 Capital 1 Ltd**, a Limited Liability Corporation organized in St. Kitts & Nevis, having Registration No. C-50402 for itself, representatives, affiliates, and assigns, with an office located at Primrose Building, Ramsbury Road, Charlestown, Nevis, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Lender");

AND

**Weiser Global Capital Markets**, for itself, affiliates, and subsidiaries, with a principal place of business located at Unit A, Balmoral Corporate Center, Balmoral Development, Sanford Drive, Nassau, Bahamas, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter "**Custodian**"). Borrower, Lender, and the Custodian are hereinafter sometimes individually referred to as a "Party" and collectively as the "Parties".

WHEREAS: Lender will deposit Cash Collateral in to Borrowers Account(s), (the "Account") held at the Custodian which Account is identified in Section 3.1, (with right to substitute the identified account, in the event another account is opened by Custodian for the Borrower for purposes of continuing to carry out the herein said obligations of Parties), in order to fund Borrower and whereby it is mutually recognized that the Collateral until released to Borrower in writing through a written Closing Statement, is the sole and exclusive property of Lender and controlled by this CMA. The written Closing Statement will memorialize the amount of funds to be released to Borrower and any expenses.

1. **Pledge by Borrower**. The Borrower hereby appoints and authorizes Lender as the exclusive lien holder over certain Collateral in accordance with the terms and conditions contained in the Master Loan Agreement for the Borrower's account and in the Borrower's name, place and stead, giving and granting to Lender, general, full power and authority to do and perform all and every act and thing whatsoever

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____  _____  _____
Borrower   Lender   Custodian



requisite necessary to be done in transacting in the Collateral as fully, to all intents and purposes, as could be done if personally present, with full power of substitution, hereby ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Collateral. Additionally, the Borrower is hereby directing that all correspondence from the Custodian relating to the Depository Account(s) during the term of the loan shall be emailed and/or mailed to the Lender.

2. **Scope of this Agreement**. Lender and Borrower have entered into the MDA, which is independent of this Agreement and the Custodian is not bound by it, may not interpret or attempt to adhere to it, shall not base Lender's entitlement order ("Entitlement Order") on it, shall not refuse to follow Lender's Entitlement Order, withhold, or attempt to interfere with or delay any such Entitlement Order. The Collateral with the Custodian will be under the sole and exclusive control of the Lender.

3. **Control by Lender**. The Lender's scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Borrower, as the Principal Account holder. The Parties further acknowledge that Lender reserves the right to direct the Custodian to comply with Entitlement Orders originated by Lender.

   3.1. The Depository Account(s) maintained by the Borrower and held by the Custodian in favor of Lender are as follows:

   List of the Dedicated Depository Account(s) (Maintained by the Borrower with the Custodian Specifying Account Name, Signatory, Address and Account Number).

   The Custodian's banking counter-parties for receipt of Collateral will be HSBC, Citibank, Deutsche Bank, Maybank, UOB, BNY Mellon, Fidelity, or Global Bank of similar class.

| Depository Broker Name: | Weiser Global Capital Markets |
|---|---|
| Depository Broker Address: | Unit A, Balmoral Corporate Center, Balmoral Development, Nassau, Bahamas |
| Borrower Account Number(s): | ███████████████████████ |
| Borrower Account Name: | ███████████████████████ |
| Borrower Account Address: | Via Giosue Carducci 36, Milan, Italy 20123 |

   3.2. Authorized Account of Party to Receive Shares, Funds for Top-Up, Conduct, Transmit, and Engage in all Transfers, Including Sale Proceeds Withdrawals shall be the Lender who maintains a depository account at the Custodian.

| Intermediary Bank: | |
|---|---|
| Swift: | |
| FFC: | Weiser Global Capital Markets Ltd. |
| REF: | |
| | ** Email notification to: collateralservices@weiser.com.bs |

   3.3. The Lender's lien and security interest in Borrower's Account also include all proceeds of the foregoing, and all proceeds of proceeds, cash, trades and other gains or takings derived during the Loan Term. Borrower represents and warrants to both Lender and the Custodian that the securities

Initials: _____ _____ _____
          Borrower   Lender   Custodian



deposited in to the account which constitute the Collateral as well as any Collateral are free and clear of any third-party lien, whether voluntary or involuntary, other than Lender's lien.

3.4. The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing and maintaining this Agreement.

3.5. For the services provided, the Custodian will be entitled to an annual Collateral management fee to be paid by Borrower based on the cumulative net asset value of all Depository Account(s), computed at time of Custodians receipt of the Collateral, the maximum fee being half of one percent (0.5%) per annum. Such a nonrefundable fee shall be paid one year in advance. The first-year fee may be deducted from the Loan proceeds or Pledged Collateral, and each year of the term thereafter shall be the exact same fee paid annually on the anniversary of the Closing Date, paid to Lender automatically without further demand and remitted by Lender to the Custodian. The annual custodian management charge is exclusive of any other possible fees and administrative costs which may be imposed by third parties.

3.6. During the Loan Term, the Borrower hereby agrees to unconditionally and irrevocably relinquish, forfeit, and renounce any right it may now or in the future have over the Depository Account(s) to the Lender in a form of a lien. Borrower shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue any instructions to the Custodian or directly or indirectly interfere with Lender's instructions to said Custodian or attempt to seek injunctive relief from any court of law, regulatory body, central depository, clearing house, custodian, sub-custodian or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Nor will Borrower inhibit, frustrate, intrude upon, intercede, impede or interfere with the Custodian, the Global Custodian or their sub-custodian counter parties during the Loan Term.

**4. Borrower's Rights in the Dedicated Depository Account(s).** Until the Lender notifies the Custodian in writing that the Lender's security interest in the Depository Account(s) have terminated, the Custodian shall not distribute to the Borrower the Collateral, any assets, funds, or property currently or in the future held in the Depository Account(s).

**5. Waiver.** The Custodian will not be liable to the Borrower for complying with any Entitlement Orders originated by the Lender and the Borrower hereby waives any rights to claims against the Custodian in connection thereto. Further, it is agreed that the Custodian is not obliged to verify and will not verify whether Lender has the right to give Entitlement Orders.

**6. Indemnity**. Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Custodian and does hereby indemnify, discharge, and forever hold harmless the Custodian, the sub-custodians and Lender, their officers, directors, affiliates, employees, agents, shareholders or assignees in relation to the actions of the Lender and will not take any action or seek remedy against the Custodian or Lender with respect to Custodian or sub-custodian complying with and enforcing this Agreement.

**7. Termination**. Lender will not terminate this Agreement unless an event of default by Borrower has taken place. Borrower may not terminate this Agreement until Lender has notified the Depository Broker in writing that Borrower has satisfied all obligation of the MDA and Lenders lien is to be released in favor of Borrower. The Custodian may terminate this Agreement on less than fourteen (14) days written notice to the Lender and the Borrower. Upon such notice of termination by the Custodian, the Lender shall within two (2) Business Days issue an Entitlement Order to the Custodian ordering the

Initials: _____  _____  _____
Borrower   Lender   Custodian



Custodian to promptly transfer the Collateral to Lender or to another like Custodian under the written instructions issued by or on behalf of the Lender. Once a transfer is made pursuant to such Entitlement Order, the Custodian's obligations under this Agreement are or deemed to have been fully discharged.

8. **Applicable Law and Provision in the Event of Dispute**. If a dispute arises with respect to the Custodian and the Borrower, the applicable law, proceedings and ultimate Custodian obligations to Borrower or Borrowers to Custodian shall be as set forth in the Custodian's Terms & Conditions of Account executed by Borrower. If a dispute arises with respect to Borrower and Lender, the applicable law and proceedings shall be set forth in the Master Loan Agreement. The Parties irrevocably and unconditionally waive any defense or claim of inconvenient or improper forum or venue of jurisdiction, on account of place of residence, location of parties, location of transaction or any other subject matter.

9. **Miscellaneous.**

   9.1. Borrower may not assign, transfer, charge, or novate any of its rights or obligations under this Agreement.

   9.2. Capitalized terms used but not defined herein shall have the meanings given to such terms in the SLA.

   9.3. This Agreement together with all of its rights and duties may be assigned in whole or in part by any party.

   9.4. The Custodian may impose fees and costs in accordance with Custodians Term's & Conditions in the event of extraordinary costs or services.

   9.5. All communications from and to any of the Parties hereto may be transmitted by mail to the addresses listed below or electronically and shall, in the case of the latter, have full legal force and effect, including electronic signatures contained therein.

**Lender:**
America 2030 Capital 1 Ltd
Attn: Loan Operations
Primrose Building
Ramsbury Road
Charlestown, Nevis
operations@america2030.com
1-807-770-2500

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____  _____  _____
         Borrower    Lender     Custodian



**Borrower**:
1AF2 SRL
Alessandro Zamboni
Via G. Carducci 3
Milan, Italy 20123
+39-3351824956
Alessandro.zamboni@theavantgardegroup.it

**Depository Broker**:
Weiser Global Capital Markets
20 Bay Street, 11th Floor
Toronto, Canada, M5J2N8
CollateralServices@weiser.com.bs ; +1 416 915 0808

or

Weiser Global Capital Markets
Unit A, Balmoral Corporate Center, Balmoral Development
Sanford Drive, Nassau, Bahamas
CollateralServices@weiser.com.bs ; +1 242 698 6600

## - DISCLAIMER -

BORROWER REPRESENTS THAT THE COLLATERAL AND OR PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY ILL-GOTTEN GAIN OR A RESULT OF ANY FRAUDULENT ACTIVITY WHICH WILL FALL UNDER PENAL LAW. BORROWER IS NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL WHEN ENTERING INTO THIS AGREEMENT. BORROWER HAS NOT BEEN DECLARED BY A COURT OF LAW TO BE MENTALLY INCOMPETENT. THE SUBJECT SHARES AND PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY PENDING LITIGATION AND ARE FREE OF ANY LIEN OR ENCUMBRANCE. BORROWER ORDERS AND MANDATES THE CUSTODIAN THAT IRRESPECTIVE OF HOW THIS AGREEMENT MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM LENDER AND SHALL NOT BE REFUTED, QUESTIONED OR CONTESTED. THE PARTIES HAVE EVALUATED ALL RISKS INDEPENDENTLY AND DID NOT RELY ON REPRESENTATIONS MADE BY LENDER. THE CUSTODIAN SHALL BE FULLY INDEMNIFIED BY BORROWER AND LENDER AGAINST ANY LIABILITIES OCCASIONED BY THIS AGREEMENT. NO FUDICIARY DUTY EXISTS BETWEEN LENDER TO BORROWER. BORROWER ATTESTS THAT, AT ALL TIMES, IT WAS REPRESENTED BY LEGAL COUNSEL AND/OR BORROWER HAS HAD AMPLE OPPORTUNITY TO ENGAGE AND CONSULT ONE.

CUSTODIAN WILL NOT BE LIABLE TO BORROWER FOR COMPLYING WITH ENTITLEMENT ORDERS ORIGINIATED BY LENDER, EVEN IF BORROWERNOTIFIES CUSTODIAN OR CUSTODIAN BELIEVES THAT LENDER IS NOT LEGALLY ENTITLED TO ISSUE THE ENTITLEMENT ORDER. WITH RESPECT TO ANY FEES AND COSTS, AT THE DISCRETION OF

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____ _____ _____
Borrower    Lender    Custodian



CUSTODIAN THIS AGREEMENT WILL SUBORDINATE CUSTODIANS TERMS AND CONDITIONS EXECUTED BY BORROWER.

** END OF TEXT **

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____ _____ _____
Borrower    Lender    Custodian



**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused their proper and duly authorized officers to execute and deliver this Agreement as of the day and year signed;

BY BORROWER

1AF2 SRL _____ Alessandro Zamboni _____ 28 August 2020
Name of Corporation (if Applicable)          Authorized Signatory                    Date

ALESSANDRO ZAMBONI – SOLE DIRECTOR _____
Name, Title

On     this _____ before     me     appeared _____
ELENA MAZZOLENI                                            ALESSANDRO ZAMBONI
(Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

Elena Mazzoleni _____ (seal)
Attorney/Notary/Witness Public

Each Attorney/Notary/Witness is only certifying Borrower's signature.

*********************************************************************************

BY LENDER

America 2030 Capital 1 Ltd _____    _____    28 August 2020
Name of Corporation                            Authorized Signatory                    Date

Mark Simon Bentley - Director _____
Name, Title

*********************************************************************************

BY DEPOSITORY BROKER

Weiser Global Capital Markets _____    _____    _____
Name of Corporation                            Authorized Signatory                    Date

_____
Name, Title

Initials: _____  _____  _____
                Borrower   Lender   Custodian



## CUSTODIAN MANAGEMENT AGREEMENT

**Security Name:** Artificial Solutions International

**Symbol:** ASAI:ST

NOW, THEREFORE, for and in consideration of mutual premises provided or to be provided and other good and valuable, sufficient, and equitable consideration, monetary or in-kind, and other mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, provided for and satisfied, and intending to be bound hereby the performance thereof, and such represents reasonably just, equitable, adequate, and reasonable in value, the parties hereto covenant and agree to and stipulate as follows. That each Party agrees that the fair value of consideration it is receiving, has received and will receive under this Agreement equals or exceeds the fair value of the consideration it is delivering.

This Custodian Management Agreement (this "Agreement" or the "CMA") is entered into, effective on the date of execution hereof, by and between:

**Scartai Three AB**, for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at Kungsgatan 30, Stockholm, Sweden. 11135 which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Borrower" or "Principal Account Holder");

AND

**Union Pacific Capital 1 Ltd**, for itself, representatives, affiliates, and assigns, with an office located at 63 St.Mary Axe, London, United Kingdom. EC3A 8AA, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Lender");

AND

**Weiser Global Capital Markets**, a Class 1 registered custodial broker dealer, for itself, affiliates, and subsidiaries, with a principal place of business located At Unit A- Balmoral Corporate Center, Balmoral Development, Sanford Drive, Nassau, Bahamas, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter **"Dealer"**). Borrower, Lender, and the Dealer are hereinafter sometimes individually referred to as a "Party" and collectively as the "Parties".

1. **Pledge by Borrower**. The Borrower hereby appoints and authorizes Lender as the exclusive lien holder over certain Pledged Collateral held on account of the Borrower, and in the Borrowers name, place and stead, giving and granting to Lender, general, full power and authority to do and perform all and every act and thing whatsoever requisite necessary to be done in transacting in the Pledged Collateral as fully, to all intents and purposes, as could be done if personally present, with full power of substitution, hereby ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Pledged Collateral. Additionally, the Borrower is hereby directing that all correspondence from the Dealer relating to the Depository Account(s) during the term of the loan shall be emailed and/or mailed to the Lender.

2. **Scope of this Agreement**. Lender and Borrower have entered into a Master Loan Agreement (the "MLA"), which is independent of this Agreement and the Dealer is not bound by it, may not interpret or attempt to adhere to it, shall not base a Lender's entitlement order ("Entitlement Order") on it, shall

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: ___ ___ ___
Borrower    Lender    Custodian



not refuse to follow Lender's Entitlement Order, withhold, or attempt to interfere with or delay any such Entitlement Order. The pledged securities with the Dealer will be under the sole and exclusive control of the Lender.

3. **Control by Lender**. The Lenders scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal Account holder. The Parties further acknowledge that Lender reserves the right to direct the Dealer to comply with Entitlement Orders originated by Lender.

3.1. The Depository Account(s) maintained by the Borrower and held by the Custodian in favor of Lender are as follows:

| Depository Broker Name: | Weiser Global Capital Markets |
|---|---|
| Depository Broker Address: | Unit A, Balmoral Corporate Center, Balmoral Development, Nassau Bahamas |
| Borrower Account Number(s): | |
| Borrower Account Name: | |
| Borrower Account Address: | Kungsgatan 30, Stockholm, Sweden. 11135 |

The Dealer's custodial banking counter parties consist of top tier multi-national banks.

Authorized Account of Party to Receive Shares, Funds for Top-Up, Conduct, Transmit, and Engage in All Transfers, Including Sale Proceeds Withdrawals.

| Intermediary Bank: | |
|---|---|
| Swift: | |
| FFC: | Weiser Global Capital Markets Ltd. |
| REF: | |
| | ** Email notification to: collateralservices@weiser.com.bs |

3.2. The Lender's lien and security interest also includes all proceeds of the foregoing, and all proceeds of trades. Borrower represents and warrants to both Lender and the Dealer that it owns the Pledged Collateral free and clear of any lien, whether voluntary or involuntary.

3.3. The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing and maintaining this Agreement.

3.4. For the services provided the Dealer will be entitled to an annual collateral management fee to be paid by Borrower based on the cumulative asset value of marketable securities on all Depository Account(s), the maximum fee being one percent (1%) per annum. Such nonrefundable fee shall be paid one year in advance. The first year fee may be deducted from the Loan proceeds or Pledged

Initials: _____  _____  _____
Borrower   Lender   Custodian



Collateral, and each year of the term thereafter shall be the same fee paid annually on the anniversary of the Closing Date, paid to Lender and remitted to the Dealer. The annual Dealer management charge is exclusive of any other possible fees and administrative costs which may be imposed by third parties.

3.5. During the Loan Term, the Borrower hereby agrees to unconditionally and irrevocably relinquish, forfeit, and renounce any right it may now or in the future have over the Depository Account(s) to the Lender in a form of a lien. Borrower shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue any instructions to the Dealer or directly or indirectly interfere with Lender's instructions to said Dealer or attempt to seek injunctive relief from any court of law, regulatory body, central depository, clearing house, custodian or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Nor will Borrower inhibit, frustrate, intrude upon, intercede, impede or interfere with the Dealer or the Dealer's sub-custodial counter parties during the Loan Term.

**4. Borrower's Rights in the Dedicated Depository Account(s).** Until the Lender notifies the Dealer in writing that the Lender's security interest in the Depository Account(s) have terminated, the Dealer shall not distribute to the Borrower any securities, assets, funds, or property currently or in the future held in the Depository Account(s).

**5. Waiver.** The Dealer will not be liable to the Borrower for complying with any Entitlement Orders originated by the Lender and the Borrower hereby waives any rights to claims against the Dealer in connection thereto. Further, it is agreed that the Dealer is not obliged to verify and will not verify whether Lender has the right to give Entitlement Orders.

**6. Indemnity.** Lender and Borrower indemnify the Dealer, its officers, directors, employees, and agents against any and all claims, demands, lawsuits, liabilities, and expenses related to, arising out of or in connection with this agreement (including without limitation any and all court costs, reasonable attorneys' fees, damages and disbursements). Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Dealer. As to Dealer, Lender's and Customer's liability under this section is joint and several. Between Lender and Borrower, Borrower agrees to be responsible for and to reimburse Lender for any liability under this Section, except to the extent any claims, demands, lawsuits, liabilities or expenses with respect to which liability arises are caused by Lender's gross negligence or willful misconduct.

**7. Termination.** Lender may at any time terminate this Agreement on not less than fourteen (14) days written notice to the Dealer and the Borrower. The Dealer may terminate this Agreement on not less than five (5) days written notice to the Lender and the Borrower. Upon such termination by the Dealer, the Lender shall within two (2) Business Days issue an Entitlement Order to the Dealer ordering the Dealer to promptly transfer the Pledged Collateral to the Lender or to such person(s) under the written instructions issued by or on behalf of the Lender. Upon transfer pursuant to such Entitlement Order, the Dealer's obligations under this Agreement are or deemed to have been fully discharged.

**8. Applicable Law and Provision in the Event of Dispute.** If a dispute arises with respect to Dealer and Borrower, the applicable law and proceedings shall be as set forth in the Dealer's Account Terms & Conditions. If a dispute arises with respect to Borrower and Lender, the applicable law and proceedings shall be set forth in the Master Loan Agreement. The Parties irrevocably and unconditionally waive

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials:

Borrower    Lender    Custodian



any defense or claim of inconvenient or improper forum or venue of jurisdiction, on account of place of residence, location of parties, location of transaction or any other subject matter.

**9. Miscellaneous.**

9.1. Borrower may not assign, transfer, charge, or novate any of its rights or obligations under this Agreement.

9.2. Capitalized terms used but not defined herein shall have the meanings given to such terms in the MLA.

9.3. All communications from and to any of the Parties hereto may be transmitted by mail to the addresses listed below or electronically and shall, in the case of the latter, have full legal force and effect, including electronic signatures contained therein.

**Lender:**
Union Pacific Capital 1 Ltd
Loan Services
63 St.Mary Axe
London, United Kingdom. EC3A 8AA
compliance@UnionPacificCapital.com ; +44 (0) 207 078 9610

**Borrower**:
Scartai Three AB
Kungsgatan 30, Stockholm, Sweden. 11135
Email: fo@scope.se  +41796283271

**Depository Broker**:
Weiser Global Capital Markets
20 Bay Street, 11th Floor
Toronto, Canada, M5J2N8
CollateralServices@weiser.com.bs ; +1 416 915 0808

or

Weiser Global Capital Markets
Unit A, Balmoral Corporate Center, Balmoral Development
Sanford Drive, Nassau, Bahamas
CollateralServices@weiser.com.bs ; +1 242 698 6600

Initials: _____ _____ _____
Borrower  Lender  Custodian



## - DISCLAIMER -

BORROWER REPRESENTS THAT THE SECURITIES AND OR PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY ILL-GOTTEN GAIN OR A RESULT OF ANY FRAUDULENT ACTIVITY WHICH WILL FALL UNDER PENAL LAW. BORROWER IS NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL WHEN ENTERING INTO THIS AGREEMENT. BORROWER HAS NOT BEEN DECLARED BY A COURT OF LAW TO BE MENTALLY INCOMPETENT. THE SUBJECT SHARES AND PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY PENDING LITIGATION AND ARE FREE OF ANY LIEN OR ENCUMBRANCE. BORROWER ORDERS AND MANDATES THE DEALER THAT IRRESPECTIVE OF HOW THIS AGREEMENT MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM LENDER AND SHALL NOT BE REFUTED, QUESTIONED OR CONTESTED. THE PARTIES HAVE EVALUATED ALL RISKS INDEPENDENTLY AND DID NOT RELY ON REPRESENTATIONS MADE BY LENDER. THE DEALER SHALL BE FULLY INDEMNIFIED BY BORROWER AND LENDER AGAINST ANY LIABILITIES OCCASIONED BY THIS AGREEMENT. NO FUDICIARY DUTY EXISTS BETWEEN LENDER TO BORROWER. BORROWER ATTESTS THAT, AT ALL TIMES, IT WAS REPRESENTED BY LEGAL COUNSEL AND/OR BORROWER HAS HAD AMPLE OPPORTUNITY TO CONSULT ONE.

DEALER WILL NOT BE LIABLE TO CUSTOMER FOR COMPLYING WITH ENTITLEMENT ORDERS ORIGINIATED BY LENDER, EVEN IF CUSTOMER NOTIFIES DEALER OR DEALER BELIEVES THAT LENDER IS NOT LEGALLY ENTITLED TO ISSUE THE ENTITLEMENT ORDER.

** END OF TEXT **

Initials: _____  _____  _____
Borrower   Lender   Custodian



**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused their proper and duly authorized officers to execute and deliver this Agreement as of the day and year signed;

BY BORROWER

SCARTAN THREE AB _____ 5/5/21

Name of Corporation (if Applicable)       Authorized Signatory       Date

FREDRIK OWESON

Name, Title

On this _5/5/21_, before me appeared _Fredrik Oweson_ (Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

_____ (seal)

Attorney/Notary/Witness Public
SOFIA VON SCHEELE

Each Attorney/Notary/Witness is only certifying Borrower's signature.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BY LENDER

Union Pacific Capital 1 Ltd _____ 05 May 2021

Name of Corporation       Authorized Signatory       Date

Vitovych Roman, Vice President

Name, Title

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BY DEPOSITORY BROKER

Weiser Global Capital Markets       Hong Yang       MAY 07, 2021

Name of Corporation       Authorized Signatory       Date

HONG YANG, DIRECTOR

Name, Title

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____ _____ _____
Borrower  Lender  Custodian





## CUSTODIAN MANAGEMENT AGREEMENT

**Security Name:** Datang Group Holdings Limited

**Symbol:** 2117:HK

NOW, THEREFORE, for and in consideration of mutual premises provided or to be provided and other good and valuable, sufficient, and equitable consideration, monetary or in-kind, and other mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, provided for and satisfied, and intending to be bound hereby the performance thereof, and such represents reasonably just, equitable, adequate, and reasonable in value, the parties hereto covenant and agree to and stipulate as follows. That each Party agrees that the fair value of consideration it is receiving, has received and will receive under this Agreement equals or exceeds the fair value of the consideration it is delivering.

This Custodian Management Agreement (this "Agreement" or the "CMA") is entered into, effective on the date of execution hereof, by and between:

**MeiDi Investment Holding Limited**, for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at Tower B, Dynasty Center, 2001 Lvling Street, Siming District Xiamen, Fujian Province, China. 361001 which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Borrower" or "Principal Account Holder");

AND

**BSC Capital, Ltd**, for itself, representatives, affiliates, and assigns, with an office located at World Trade Center, 200-B, Suite 128, Calle 53 Este, Marbella, Panama, APD, 0834-0253, Republica de Panama, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Lender");

AND

**Weiser Global Capital Markets**, a Class 1 registered custodial broker dealer, for itself, affiliates, and subsidiaries, with a principal place of business located At Unit A- Balmoral Corporate Center, Balmoral Development, Sanford Drive, Nassau, Bahamas, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter "**Dealer**"). Borrower, Lender, and the Dealer are hereinafter sometimes individually referred to as a "Party" and collectively as the "Parties".

**WHEREAS:** Lender will deposit Cash Collateral in to Borrowers Account(s), (the "Account") held at the Custodian which Account is identified in Section 3.1, (with right to substitute the identified account, in the event another account is opened by Custodian for the Borrower for purposes of continuing to carry out the herein said obligations of Parties), in order to fund Borrower and whereby it is mutually recognized that the Collateral until released to Borrower in writing through a written Closing Statement, is the sole and exclusive property of Lender and controlled by this CMA. The written Closing Statement will memorialize the amount of funds to be released to Borrower and any expenses.

1. **Pledge by Borrower.** The Borrower hereby appoints and authorizes Lender as the exclusive lien holder over certain Pledged Collateral held on account of the Borrower, and in the Borrowers name, place and stead, giving and granting to Lender, general, full power and authority to do and perform all and every act and thing whatsoever requisite necessary to be done in transacting in the Pledged

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____ _____ _____
Borrower   Lender   Custodian



Collateral as fully, to all intents and purposes, as could be done if personally present, with full power of substitution, hereby ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Pledged Collateral. Additionally, the Borrower is hereby directing that all correspondence from the Dealer relating to the Depository Account(s) during the term of the loan shall be emailed and/or mailed to the Lender.

2. **Scope of this Agreement**. Lender and Borrower have entered into a Master Loan Agreement (the "MLA"), which is independent of this Agreement and the Dealer is not bound by it, may not interpret or attempt to adhere to it, shall not base a Lender's entitlement order ("Entitlement Order") on it, shall not refuse to follow Lender's Entitlement Order, withhold, or attempt to interfere with or delay any such Entitlement Order. The pledged securities with the Dealer will be under the sole and exclusive control of the Lender.

3. **Control by Lender**. The Lenders scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal Account holder. The Parties further acknowledge that Lender reserves the right to direct the Dealer to comply with Entitlement Orders originated by Lender.

3.1. The Depository Account(s) maintained by the Borrower and held by the Custodian in favor of Lender are as follows:

| Depository Broker Name: | Weiser Global Capital Markets |
|---|---|
| Depository Broker Address: | Unit A, Balmoral Corporate Center, Balmoral Development, Nassau, Bahamas |
| Borrower Account Number(s): | |
| Borrower Account Name: | |
| Borrower Account Address: | |

3.2.

3.3. The Dealer's custodial banking counter parties consist of top tier multi-national banks.

Authorized Account of Party to Receive Shares, Funds for Top-Up, Conduct, Transmit, and Engage in All Transfers, Including Sale Proceeds Withdrawals.

| Intermediary Bank: | |
|---|---|
| Swift: | |
| FFC: | Weiser Global Capital Markets Ltd. |
| REF: | |
| | ** Email notification to: collateralservices@weiser.com.bs |

3.4. The Lender's lien and security interest also includes all proceeds of the foregoing, and all proceeds of trades. Borrower represents and warrants to both Lender and the Dealer that it owns the Pledged Collateral free and clear of any lien, whether voluntary or involuntary.

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____ W _____  _____
Borrower    Lender    Custodian



3.5. The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing and maintaining this Agreement.

3.6. For the services provided the Dealer will be entitled to an annual collateral management fee to be paid by Borrower based on the cumulative asset value of marketable securities on all Depository Account(s), the maximum fee being one percent (1%) per annum. Such nonrefundable fee shall be paid one year in advance. The first year fee may be deducted from the Loan proceeds or Pledged Collateral, and each year of the term thereafter shall be the same fee paid annually on the anniversary of the Closing Date, paid to Lender and remitted to the Dealer. The annual Dealer management charge is exclusive of any other possible fees and administrative costs which may be imposed by third parties.

3.7. During the Loan Term, the Borrower hereby agrees to unconditionally and irrevocably relinquish, forfeit, and renounce any right it may now or in the future have over the Depository Account(s) to the Lender in a form of a lien. Borrower shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue any instructions to the Dealer or directly or indirectly interfere with Lender's instructions to said Dealer or attempt to seek injunctive relief from any court of law, regulatory body, central depository, clearing house, custodian or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Nor will Borrower inhibit, frustrate, intrude upon, intercede, impede or interfere with the Dealer or the Dealer's sub-custodial counter parties during the Loan Term.

4. **Borrower's Rights in the Dedicated Depository Account(s).** Until the Lender notifies the Dealer in writing that the Lender's security interest in the Depository Account(s) have terminated, the Dealer shall not distribute to the Borrower any securities, assets, funds, or property currently or in the future held in the Depository Account(s).

5. **Waiver.** The Dealer will not be liable to the Borrower for complying with any Entitlement Orders originated by the Lender and the Borrower hereby waives any rights to claims against the Dealer in connection thereto. Further, it is agreed that the Dealer is not obliged to verify and will not verify whether Lender has the right to give Entitlement Orders.

6. **Indemnity.** Lender and Borrower indemnify the Dealer, its officers, directors, employees, and agents against any and all claims, demands, lawsuits, liabilities, and expenses related to, arising out of or in connection with this agreement (including without limitation any and all court costs, reasonable attorneys' fees, damages and disbursements). Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Dealer. As to Dealer, Lender's and Customer's liability under this section is joint and several. Between Lender and Borrower, Borrower agrees to be responsible for and to reimburse Lender for any liability under this Section, except to the extent any claims, demands, lawsuits, liabilities or expenses with respect to which liability arises are caused by Lender's gross negligence or willful misconduct.

7. **Termination.** Lender may at any time terminate this Agreement on not less than fourteen (14) days written notice to the Dealer and the Borrower. The Dealer may terminate this Agreement on not less than five (5) days written notice to the Lender and the Borrower. Upon such termination by the Dealer, the Lender shall within two (2) Business Days issue an Entitlement Order to the Dealer ordering the Dealer to promptly transfer the Pledged Collateral to the Lender or to such person(s) under the written instructions issued by or on behalf of the Lender. Upon transfer pursuant to such

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _W_ _(A)O_
Borrower   Lender   Custodian



Entitlement Order, the Dealer's obligations under this Agreement are or deemed to have been fully discharged.

8. **Applicable Law and Provision in the Event of Dispute**. If a dispute arises with respect to Dealer and Borrower, the applicable law and proceedings shall be as set forth in the Dealer's Account Terms & Conditions. If a dispute arises with respect to Borrower and Lender, the applicable law and proceedings shall be set forth in the Master Loan Agreement. The Parties irrevocably and unconditionally waive any defense or claim of inconvenient or improper forum or venue of jurisdiction, on account of place of residence, location of parties, location of transaction or any other subject matter.

9. Miscellaneous.

9.1. Borrower may not assign, transfer, charge, or novate any of its rights or obligations under this Agreement.

9.2. Capitalized terms used but not defined herein shall have the meanings given to such terms in the MLA.

9.3. All communications from and to any of the Parties hereto may be transmitted by mail to the addresses listed below or electronically and shall, in the case of the latter, have full legal force and effect, including electronic signatures contained therein.

**Lender:**
BSC Capital Ltd
Operations Manager
World Trade Center, 200-B, Suite 128
Calle 53 Este, Marbella
Panama, APD. 0834-0253
info@BearStearnsCompanies.com ; +1-888-747-0822

**Borrower**:
MeiDi Investment Holding Limited
Tower B, Dynasty Center, 2001 Lvling Street, Siming District
Xiamen, Fujian Province, China. 361001
Email: wu@goodfirst.cn; +86139660308899                    +

**Depository Broker**:
Weiser Global Capital Markets
20 Bay Street, 11th Floor
Toronto, Canada, M5J2N8
CollateralServices@weiser.com.bs ; +1 416 915 0808

or

Initials: _W_  _AD_  ___
Borrower  Lender  Custodian



Weiser Global Capital Markets
Unit A, Balmoral Corporate Center, Balmoral Development
Sanford Drive, Nassau, Bahamas
CollateralServices@weiser.com.bs ; +1 242 698 6600

## - DISCLAIMER -

BORROWER REPRESENTS THAT THE SECURITIES AND OR PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY ILL-GOTTEN GAIN OR A RESULT OF ANY FRAUDULENT ACTIVITY WHICH WILL FALL UNDER PENAL LAW. BORROWER IS NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL WHEN ENTERING INTO THIS AGREEMENT. BORROWER HAS NOT BEEN DECLARED BY A COURT OF LAW TO BE MENTALLY INCOMPETENT. THE SUBJECT SHARES AND PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY PENDING LITIGATION AND ARE FREE OF ANY LIEN OR ENCUMBRANCE. BORROWER ORDERS AND MANDATES THE DEALER THAT IRRESPECTIVE OF HOW THIS AGREEMENT MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM LENDER AND SHALL NOT BE REFUTED, QUESTIONED OR CONTESTED. THE PARTIES HAVE EVALUATED ALL RISKS INDEPENDENTLY AND DID NOT RELY ON REPRESENTATIONS MADE BY LENDER. THE DEALER SHALL BE FULLY INDEMNIFIED BY BORROWER AND LENDER AGAINST ANY LIABILITIES OCCASIONED BY THIS AGREEMENT. NO FUDICIARY DUTY EXISTS BETWEEN LENDER TO BORROWER. BORROWER ATTESTS THAT, AT ALL TIMES, IT WAS REPRESENTED BY LEGAL COUNSEL AND/OR BORROWER HAS HAD AMPLE OPPORTUNITY TO CONSULT ONE.

DEALER WILL NOT BE LIABLE TO CUSTOMER FOR COMPLYING WITH ENTITLEMENT ORDERS ORIGINIATED BY LENDER, EVEN IF CUSTOMER NOTIFIES DEALER OR DEALER BELIEVES THAT LENDER IS NOT LEGALLY ENTITLED TO ISSUE THE ENTITLEMENT ORDER.

** END OF TEXT **

Initials: _W_ _DD_
Borrower   Lender   Custodian



**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused their proper and duly authorized officers to execute and deliver this Agreement as of the day and year signed;

BY BORROWER

MeiDi Investment Holding Limited
Name of Corporation (if Applicable)

Authorized Signatory

11 / 05 / 2021
Date

Mr. Wu Di, Director
Name, Title

On this _____, before me appeared _____
(Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

_____ (seal)
Attorney/Notary/Witness Public

Each Attorney/Notary/Witness is only certifying Borrower's signature.

*******************************************************************************

BY LENDER

BSC Capital Ltd
Name of Corporation

Authorized Signatory

10 May 2021
Date

DUSKO OKSANA   SENIOR VICE PRESIDENT
Name, Title

*******************************************************************************

BY DEPOSITORY BROKER

Weiser Global Capital Markets
Name of Corporation

Authorized Signatory

Date

Name, Title

Initials:  W      QD
          Borrower  Lender  Custodian



## CUSTODIAN MANAGEMENT AGREEMENT

**Security Name:** Prime Road Power PCL

**Symbol:** PRIME:TB

NOW, THEREFORE, for and in consideration of mutual premises provided or to be provided and other good and valuable, sufficient, and equitable consideration, monetary or in-kind, and other mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, provided for and satisfied, and intending to be bound hereby the performance thereof, and such represents reasonably just, equitable, adequate, and reasonable in value, the parties hereto covenant and agree to and stipulate as follows. That each Party agrees that the fair value of consideration it is receiving, has received and will receive under this Agreement equals or exceeds the fair value of the consideration it is delivering.

This Custodian Management Agreement (this "Agreement" or the "CMA") is entered into, effective on the date of execution hereof, by and between:

**Surachet Chaipatamanont,** for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at 1 TP&T Tower, 22Fl., Soi Vibhavadi Rangsit 19 Road, Chatuchak, Bangkok, Thailand, 10900 which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Borrower" or "Principal Account Holder");

AND

**AC Capital Ltd,** for itself, representatives, affiliates, and assigns, with an office located at New Horizon Building, Ground Floor, 3 1/2 Miles Philip S.W. Goldson Highway, Belize City, Belize C.A., which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter the "Lender");

AND

**Weiser Global Capital Markets,** a Class 1 registered custodial broker dealer, for itself, affiliates, and subsidiaries, with a principal place of business located At Unit A- Balmoral Corporate Center, Balmoral Development, Sanford Drive, Nassau, Bahamas, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter **"Dealer"**). Borrower, Lender, and the Dealer are hereinafter sometimes individually referred to as a "Party" and collectively as the "Parties".

**WHEREAS:** Lender will deposit Cash Collateral in to Borrowers Account(s), (the "Account") held at the Custodian which Account is identified in Section 3.1, (with right to substitute the identified account, in the event another account is opened by Custodian for the Borrower for purposes of continuing to carry out the herein said obligations of Parties), in order to fund Borrower and whereby it is mutually recognized that the Collateral until released to Borrower in writing through a written Closing Statement, is the sole and exclusive property of Lender and controlled by this CMA. The written Closing Statement will memorialize the amount of funds to be released to Borrower and any expenses.

1. **Pledge by Borrower.** The Borrower hereby appoints and authorizes Lender as the exclusive lien holder over certain Pledged Collateral held on account of the Borrower, and in the Borrowers name, place and stead, giving and granting to Lender, general, full power and authority to do and perform all and every act and thing whatsoever requisite necessary to be done in transacting in the Pledged Collateral as fully,

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____  _____  _____
Borrower / Lender    Custodian



to all intents and purposes, as could be done if personally present, with full power of substitution, hereby ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Pledged Collateral. Additionally, the Borrower is hereby directing that all correspondence from the Dealer relating to the Depository Account(s) during the term of the loan shall be emailed and/or mailed to the Lender.

2. **Scope of this Agreement.** Lender and Borrower have entered into a Securities Debt Agreement (the "SDA"), which is independent of this Agreement and the Dealer is not bound by it, may not interpret or attempt to adhere to it, shall not base a Lender's entitlement order ("Entitlement Order") on it, shall not refuse to follow Lender's Entitlement Order, withhold, or attempt to interfere with or delay any such Entitlement Order. The pledged securities with the Dealer will be under the sole and exclusive control of the Lender.

3. **Control by Lender.** The Lenders scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal Account holder. The Parties further acknowledge that Lender reserves the right to direct the Dealer to comply with Entitlement Orders originated by Lender.

   3.1. The Depository Account(s) maintained by the Borrower and held by the Custodian in favor of Lender are as follows:

| | |
|---|---|
| **Depository Broker Name:** | Weiser Global Capital Markets |
| **Depository Broker Address:** | Unit A, Balmoral Corporate Center, Balmoral Development, Nassau, Bahamas |
| **Borrower Account Number(s):** | |
| **Borrower Account Name:** | Surachet Chaipatamanont |
| **Borrower Account Address:** | 1 TP&T Tower, 22Fl., Soi Vibhavadi Rangsit 19 Road, Chatuchak, Bangkok, Thailand, 10900 |

The Dealer's custodial banking counter parties consist of top tier multi-national banks.

Authorized Account of Party to Receive Shares, Funds for Top-Up, Conduct, Transmit, and Engage in All Transfers, Including Sale Proceeds Withdrawals.

| | |
|---|---|
| Intermediary Bank: | |
| Swift: | |
| FFC: | Weiser Global Capital Markets Ltd. |
| REF: | |
| | ** Email notification to: collateralservices@weiser.com.bs |

Initials: _____ _____ _____
                Borrower  / Lender  Custodian



3.2. The Lender's lien and security interest also includes all proceeds of the foregoing, and all proceeds of trades. Borrower represents and warrants to both Lender and the Dealer that it owns the Pledged Collateral free and clear of any lien, whether voluntary or involuntary.

3.3. The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing and maintaining this Agreement.

3.4. For the services provided the Dealer will be entitled to an annual collateral management fee to be paid by Borrower based on the cumulative asset value of marketable securities on all Depository Account(s), the maximum fee being ~~one percent (1%) per annum~~. semi-annual charge of one quarter of one percent (0.25%) Such nonrefundable fee shall be paid one year in advance. The first year fee may be deducted from the Loan proceeds or Pledged Collateral, and each year of the term thereafter shall be the same fee paid annually on the anniversary of the Closing Date, paid to Lender and remitted to the Dealer. The annual Dealer management charge is exclusive of any other possible fees and administrative costs which may be imposed by third parties.

3.5. During the Loan Term, the Borrower hereby agrees to unconditionally and irrevocably relinquish, forfeit, and renounce any right it may now or in the future have over the Depository Account(s) to the Lender in a form of a lien. Borrower shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue any instructions to the Dealer or directly or indirectly interfere with Lender's instructions to said Dealer or attempt to seek injunctive relief from any court of law, regulatory body, central depository, clearing house, custodian or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Nor will Borrower inhibit, frustrate, intrude upon, intercede, impede or interfere with the Dealer or the Dealer's sub-custodial counter parties during the Loan Term.

4. **Borrower's Rights in the Dedicated Depository Account(s).** Until the Lender notifies the Dealer in writing that the Lender's security interest in the Depository Account(s) have terminated, the Dealer shall not distribute to the Borrower any securities, assets, funds, or property currently or in the future held in the Depository Account(s).

5. **Waiver.** The Dealer will not be liable to the Borrower for complying with any Entitlement Orders originated by the Lender and the Borrower hereby waives any rights to claims against the Dealer in connection thereto. Further, it is agreed that the Dealer is not obliged to verify and will not verify whether Lender has the right to give Entitlement Orders.

6. **Indemnity.** Lender and Borrower indemnify the Dealer, its officers, directors, employees, and agents against any and all claims, demands, lawsuits, liabilities, and expenses related to, arising out of or in connection with this agreement (including without limitation any and all court costs, reasonable attorneys' fees, damages and disbursements). Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Dealer. As to Dealer, Lender's and Customer's liability under this section is joint and several. Between Lender and Borrower, Borrower agrees to be responsible for and to reimburse Lender for any liability under this Section, except to the extent any claims, demands, lawsuits, liabilities or expenses with respect to which liability arises are caused by Lender's gross negligence or willful misconduct.

7. **Termination.** Lender may at any time terminate this Agreement on not less than fourteen (14) days written notice to the Dealer and the Borrower. The Dealer may terminate this Agreement on not less than five (5) days written notice to the Lender and the Borrower. Upon such termination by the Dealer, the Lender shall

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____
Borrower / Lender / Custodian



within two (2) Business Days issue an Entitlement Order to the Dealer ordering the Dealer to promptly transfer the Pledged Collateral to the Lender or to such person(s) under the written instructions issued by or on behalf of the Lender. Upon transfer pursuant to such Entitlement Order, the Dealer's obligations under this Agreement are or deemed to have been fully discharged.

8. **Applicable Law and Provision in the Event of Dispute.** If a dispute arises with respect to Dealer and Borrower, the applicable law and proceedings shall be as set forth in the Dealer's Account Terms & Conditions. If a dispute arises with respect to Borrower and Lender, the applicable law and proceedings shall be set forth in the Stock Loan Agreement. The Parties irrevocably and unconditionally waive any defense or claim of inconvenient or improper forum or venue of jurisdiction, on account of place of residence, location of parties, location of transaction or any other subject matter.

9. **Miscellaneous.**

    9.1. Borrower may not assign, transfer, charge, or novate any of its rights or obligations under this Agreement.

    9.2. Capitalized terms used but not defined herein shall have the meanings given to such terms in the SDA.

    9.3. All communications from and to any of the Parties hereto may be transmitted by mail to the addresses listed below or electronically and shall, in the case of the latter, have full legal force and effect, including electronic signatures contained therein.

**Lender:**
AC Capital Ltd
Loan Services
New Horizon Building, Ground Floor, 3 1/2 Miles Philip S.W.
Goldson Highway, Belize City, Belize C.A.
financialservices@andrewcarnegie.io ; +1 (866) 231-6075

**Borrower**:
Surachet Chaipatamanont
1 TP&T Tower, 22Fl., Soi Vibhavadi Rangsit 19 Road,
Chatuchak, Bangkok, Thailand, 10900
surachetc8@gmail.com ; +66-90-9153656

**Depository Broker:**
Weiser Global Capital Markets
20 Bay Street, 11th Floor
Toronto, Canada, M5J2N8
CollateralServices@weiser.com.bs ; +1 416 915 0808

or

Initials: _____    _____    _____
          Borrower    Lender    Custodian



Weiser Global Capital Markets
Unit A, Balmoral Corporate Center, Balmoral Development
Sanford Drive, Nassau, Bahamas
CollateralServices@weiser.com.bs ; +1 242 698 6600

## - DISCLAIMER -

BORROWER REPRESENTS THAT THE SECURITIES AND OR PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY ILL-GOTTEN GAIN OR A RESULT OF ANY FRAUDULENT ACTIVITY WHICH WILL FALL UNDER PENAL LAW. BORROWER IS NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL WHEN ENTERING INTO THIS AGREEMENT. BORROWER HAS NOT BEEN DECLARED BY A COURT OF LAW TO BE MENTALLY INCOMPETENT. THE SUBJECT SHARES AND PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY PENDING LITIGATION AND ARE FREE OF ANY LIEN OR ENCUMBRANCE. BORROWER ORDERS AND MANDATES THE DEALER THAT IRRESPECTIVE OF HOW THIS AGREEMENT MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM LENDER AND SHALL NOT BE REFUTED, QUESTIONED OR CONTESTED. THE PARTIES HAVE EVALUATED ALL RISKS INDEPENDENTLY AND DID NOT RELY ON REPRESENTATIONS MADE BY LENDER. THE DEALER SHALL BE FULLY INDEMNIFIED BY BORROWER AND LENDER AGAINST ANY LIABILITIES OCCASIONED BY THIS AGREEMENT. NO FUDICIARY DUTY EXISTS BETWEEN LENDER TO BORROWER. BORROWER ATTESTS THAT, AT ALL TIMES, IT WAS REPRESENTED BY LEGAL COUNSEL AND/OR BORROWER HAS HAD AMPLE OPPORTUNITY TO CONSULT ONE.

DEALER WILL NOT BE LIABLE TO CUSTOMER FOR COMPLYING WITH ENTITLEMENT ORDERS ORIGINIATED BY LENDER, EVEN IF CUSTOMER NOTIFIES DEALER OR DEALER BELIEVES THAT LENDER IS NOT LEGALLY ENTITLED TO ISSUE THE ENTITLEMENT ORDER.

## ** END OF TEXT **

Initials: _____ _____ _____
Borrower / Lender Custodian



**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused their proper and duly authorized officers to execute and deliver this Agreement as of the day and year signed;

BY BORROWER

| NA | | 03 June 2021 |
|---|---|---|
| Name of Corporation (if Applicable) | Authorized Signatory | Date |

SURACHET CHAIPATAMANONT
_____
Name, Title

On this ____3 June 2021____, before me appeared ____SURACHET CHAIPATAMANONT____ (Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

_____ (seal)
Attorney/Notary/Witness Public
        Panidah Kanokworakarn

Each Attorney/Notary/Witness is only certifying Borrower's signature.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BY LENDER

| AC Capital Ltd | | 06/04/2021 |
|---|---|---|
| Name of Corporation | Authorized Signatory | Date |

Gulnar Muradova, Compliance
_____
Name, Title

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BY DEPOSITORY BROKER

| Weiser Global Capital Markets | | |
|---|---|---|
| Name of Corporation | Authorized Signatory | Date |

_____
Name, Title

Weiser Global Capital Markets Collateral Services Department
Phone: +1-242-698-6600 collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____ _____ _____
         Borrower   Lender   Custodian



## CUSTODIAN MANAGEMENT AGREEMENT

Security Name: China Bohai Bank Co Ltd

Symbol: 9668.HK

NOW, THEREFORE, for and in consideration of mutual premises provided or to be provided and other good and valuable, sufficient, and equitable consideration, monetary or in-kind, and other mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, provided for and satisfied, and intending to be bound hereby the performance thereof, and such represents reasonably just, equitable, adequate, and reasonable in value, the parties hereto covenant and agree to and stipulate as follows. That each Party agrees that the fair value of consideration it is receiving, has received and will receive under this Agreement equals or exceeds the fair value of the consideration it is delivering.

This Custodian Management Agreement (this "Agreement" or the "CMA") is entered into, effective on the date of execution hereof, by and between:

TOP-LIGHT (HK) INDUSTRY LIMITED _____, (hereinafter the "**Borrower**") for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at:

Flat A, 18/F, Kingswell Commercial Tower   (Address 1)

173 Lockhart Road   (Address 2)

Hong Kong, China _____ (City, Country, Postal Code)

which represents and warrants that they have the capacity and standing to enter into this Agreement;

AND

  ASTOR ASSET MANAGEMENT 3 LIMITED _____, (hereinafter the "**Lender**"), a
  limited liability _____ corporation, having Registration No. _____, for itself,
representatives, affiliates, and assigns, with an office located at:

777 Dunsmuir Street, Suite 1400 _____ (Address 1)

_____ (Address 2)

  Vancouver, British Columbia, Canada V7Y 1K4 (City, Country, Postal Code)

which represents and warrants that they have the capacity and standing to enter into this Agreement;

AND

**WEISER GLOBAL CAPITAL MARKETS**, a Class 1 registered custodial broker dealer, for itself, affiliates, and subsidiaries, with a principal place of business located At Unit 1 Western Road, Western Business Center, Nassau, Bahamas, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter "**Dealer**", "**Custodian**", or "**Broker**"). Borrower, Lender, and the Dealer are hereinafter sometimes individually referred to as a "Party" and collectively as the "Parties".

Initials: __HH__   _____   _____
            Borrower    Lender      Dealer



**WEISER**
GLOBAL CAPITAL MARKETS

**WHEREAS:** Lender may deposit Cash Collateral to the account(s) of the Borrower (the "Account") held at the Custodian as identified in Section 3.1. Lender reserves the right to substitute the identified Account in the event another account is opened by Custodian for the Borrower for the purpose of continuing to carry out the herein said obligations of the Parties. It is mutually recognized that the Cash Collateral, until released to the Borrower in writing in conjunction with a Closing Statement, is the exclusive property of the Lender and controlled by this CMA. Written Closing Statement(s) will memorialize expenses and the amount of funds to be released to the Borrower.

1. **Pledge by Borrower.** The Borrower hereby appoints and authorizes Lender as the exclusive lien holder over certain Pledged Collateral held on account of the Borrower, and in the Borrowers name, place and stead, giving and granting to Lender, general, full power and authority to do and perform all and every act and thing whatsoever requisite necessary to be done in transacting in the Pledged Collateral as fully, to all intents and purposes, as could be done if personally present, with full power of substitution, hereby ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Pledged Collateral. Additionally, the Borrower is hereby directing that all correspondence from the Dealer relating to the Depository Account(s) during the term of the loan shall be emailed and/or mailed to the Lender.

2. **Scope of this Agreement.** Lender and Borrower have entered into a Master Loan Agreement (the "MLA"), which is independent of this Agreement and the Dealer is not bound by it, may not interpret or attempt to adhere to it, shall not base a Lender's entitlement order ("Entitlement Order") on it, shall not refuse to follow Lender's Entitlement Order, withhold, or attempt to interfere with or delay any such Entitlement Order. The pledged securities with the Dealer will be under the sole and exclusive control of the Lender.

3. **Control by Lender.** The Lenders scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal Account holder. The Parties further acknowledge that Lender reserves the right to direct the Dealer to comply with Entitlement Orders originated by Lender.

    3.1. The Depository Account(s) maintained by the Borrower at the Dealer in favor of Lender are as follows:

| Custodial Broker Name: | WEISER GLOBAL CAPITAL MARKETS |
|---|---|
| Custodial Broker Address: | Unit A- Balmoral Corporate Center, Balmoral Development, Sanford Drive, Nassau, Bahamas |
| Borrower Account Number(s): | ███████████ |
| Borrower Account Name: | TOP-LIGHT (HK) INDUSTRY LIMITED Pledged & TOP-LIGHT (HK) INDUSTRY LIMITED Collateralized |
| Borrower Account Address: | Flat A, 18/F, Kingswell Commercial Tower,173 Lockhart Road, Hong Kong |

Authorized Account of Lender to Receive Shares, Funds for Top-Up, Conduct, Transmit, and Engage in All Transfers, Including Sale Proceeds Withdrawals:

| Intermediary Bank: | * Contact Dealer for Funds SI in advance * |
|---|---|
| Swift: | |
| FFC: | Weiser Global Capital Markets Ltd. |
| REF: | |
| | * Email notification to: collateralservices@weiser.com.bs |

Initials: HH / Borrower   A.S. / Lender   HY / Dealer



3.2. The Lender's lien and security interest includes all proceeds of the foregoing, and all proceeds of trades. Borrower represents and warrants to both Lender and the Dealer that it owns the Pledged Collateral free and clear of any lien, whether voluntary or involuntary.

3.3. The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing, and maintaining this Agreement.

3.4. For the services provided the Dealer will be entitled to an annual collateral management fee to be paid by Borrower based on the cumulative asset value of marketable securities on all Depository Account(s), the maximum fee being one percent (1%) per annum. Such nonrefundable fee shall be paid one year in advance. The first year fee may be deducted from the Loan proceeds or Pledged Collateral, and each year of the term thereafter shall be the same fee paid annually on the anniversary of the Closing Date, paid to Lender and remitted to the Dealer. The annual Dealer management charge is exclusive of any other possible fees and administrative costs which may be imposed by third parties.

3.5. During the Loan Term, the Borrower hereby agrees to unconditionally and irrevocably relinquish, forfeit, and renounce any right it may now or in the future have over the Depository Account(s) to the Lender in a form of a lien. Borrower shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue any instructions to the Dealer or directly or indirectly interfere with Lender's instructions to said Dealer or attempt to seek injunctive relief from any court of law, regulatory body, central depository, clearing house, custodian or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Nor will Borrower inhibit, frustrate, intrude upon, intercede, impede or interfere with the Dealer or the Dealer's sub-custodial counter parties during the Loan Term.

4. **Borrower's Rights in the Dedicated Depository Account(s)**. Until the Lender notifies the Dealer in writing that the Lender's security interest in the Depository Account(s) have terminated, the Dealer shall not distribute to the Borrower any securities, assets, funds, or property currently or in the future held in the Depository Account(s).

5. **Waiver**. The Dealer will not be liable to the Borrower for complying with any Entitlement Orders originated by the Lender and the Borrower hereby waives any rights to claims against the Dealer in connection thereto. Further, it is agreed that the Dealer is not obliged to verify and will not verify whether Lender has the right to give Entitlement Orders.

6. **Indemnity**. Lender and Borrower indemnify the Dealer, its officers, directors, employees, and agents against any and all claims, demands, lawsuits, liabilities, and expenses related to, arising out of or in connection with this agreement (including without limitation any and all court costs, reasonable attorneys' fees, damages and disbursements). Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Dealer. As to Dealer, Lender's and Borrower's liability under this section is joint and several. Between Lender and Borrower, Borrower agrees to be responsible for and to reimburse Lender for any liability under this Section, except to the extent any claims, demands, lawsuits, liabilities or expenses with respect to which liability arises are caused by Lender's gross negligence or willful misconduct.

Initials: __HH__   ____   ____
Borrower   Lender   Dealer



7. **Termination.** Lender may at any time terminate this Agreement on not less than fourteen (14) days written notice to the Dealer and the Borrower. The Dealer may terminate this Agreement on not less than five (5) days written notice to the Lender and the Borrower. Upon such termination by the Dealer, the Lender shall within two (2) Business Days issue an Entitlement Order to the Dealer ordering the Dealer to promptly transfer the Pledged Collateral to the Lender or to such person(s) under the written instructions issued by or on behalf of the Lender. Upon transfer pursuant to such Entitlement Order, the Dealer's obligations under this Agreement are or deemed to have been fully discharged.

8. **Applicable Law in the Event of Dispute.** If a dispute arises with respect to Dealer and Borrower, the applicable law and proceedings shall be as set forth in the Dealer's Account Terms & Conditions. If a dispute arises with respect to Lender and Borrower, the applicable law and proceedings shall be set forth in the Master Loan Agreement. Disputes between Lender and Borrower, if any, must be settled in advance of proceedings between Dealer and Borrower. The Parties irrevocably and unconditionally waive any defense or claim of inconvenient or improper forum or venue of jurisdiction, on account of place of residence, location of parties, location of transaction or any other subject matter.

9. **Miscellaneous.**

   9.1. Borrower may not assign, transfer, charge, or novate any of its rights or obligations under this Agreement.

   9.2. Capitalized terms used but not defined herein shall have the meanings given to such terms in the MLA.

   9.3. All communications from and to any of the Parties hereto may be transmitted by mail to the addresses listed below or electronically and shall, in the case of the latter, have full legal force and effect, including electronic signatures contained therein.

   Lender:

   | ASTOR ASSET MANAGEMENT 3 LIMITED | (Name of Lender) |
   | --- | --- |
   | 777 Dunsmuir Street, Suite 1400 | (Address 1) |
   | | (Address 2) |
   | Vancouver, British Columbia, V7Y 1K4 | (City, State, Postal) |
   | Canada | (Country) |
   | Compliance@astorcapitalfund.com; 18887751628 | (Email, Phone No.) |

   Borrower:

   | TOP-LIGHT (HK) INDUSTRY LIMITED | (Name of Borrower) |
   | --- | --- |
   | Flat A, 18/F, Kingswell Commercial Tower | (Address 1) |
   | 173 Lockhart Road | (Address 2) |
   | Hong Kong | (City, State, Postal) |
   | China | (Country) |
   | 36453524@qq.com; +86-139-07098299 | (Email, Phone No.) |

   Initials: ___HH___   ___A.S.___   ___HG___
           Borrower    Lender      Dealer



**Depository Broker**:

WEISER GLOBAL CAPITAL MARKETS
20 Bay Street, 11th Floor
Toronto, Canada M5J2N8
CollateralServices@weiser.com.bs +1-416-915-0808

or

WEISER GLOBAL CAPITAL MARKETS
Unit A- Balmoral Corporate Center, Balmoral Development, Sanford Drive
Nassau, Bahamas
CollateralServices@weiser.com.bs +1-242-698-6600

## - DISCLAIMER -

BORROWER REPRESENTS THAT THE SECURITIES AND OR PROPERTY IN THE
DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY ILL-GOTTEN GAIN OR A RESULT OF
ANY FRAUDULENT ACTIVITY WHICH WILL FALL UNDER PENAL LAW. BORROWER IS
NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL WHEN ENTERING INTO THIS
AGREEMENT. BORROWER HAS NOT BEEN DECLARED BY A COURT OF LAW TO BE
MENTALLY INCOMPETENT. THE SUBJECT SHARES AND PROPERTY IN THE
DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY PENDING LITIGATION AND ARE
FREE OF ANY LIEN OR ENCUMBRANCE. BORROWER ORDERS AND MANDATES THE
DEALER THAT IRRESPECTIVE OF HOW THIS AGREEMENT MAY BE INTERPRETED, ANY
AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM LENDER AND SHALL
NOT BE REFUTED, QUESTIONED OR CONTESTED. THE PARTIES HAVE EVALUATED
ALL RISKS INDEPENDENTLY AND DID NOT RELY ON REPRESENTATIONS MADE BY
LENDER. THE DEALER SHALL BE FULLY INDEMNIFIED BY BORROWER AND LENDER
AGAINST ANY LIABILITIES OCCASIONED BY THIS AGREEMENT. NO FUDICIARY DUTY
EXISTS BETWEEN LENDER TO BORROWER. BORROWER ATTESTS THAT, AT ALL
TIMES, IT WAS REPRESENTED BY LEGAL COUNSEL AND/OR BORROWER HAS HAD
AMPLE OPPORTUNITY TO CONSULT ONE.

DEALER WILL NOT BE LIABLE TO BORROWER FOR COMPLYING WITH ENTITLEMENT
ORDERS ORIGINIATED BY LENDER, EVEN IF BORROWER NOTIFIES DEALER OR
DEALER BELIEVES THAT LENDER IS NOT LEGALLY ENTITLED TO ISSUE THE
ENTITLEMENT ORDER.

** END OF TEXT **

Initials: ___HH___  ___A.S.___  ___HY___
Borrower   Lender   Dealer



**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused their proper and duly authorized officers to execute and deliver this Agreement as of the day and year signed;

**BY BORROWER**

TOP-LIGHT (HK) INDUSTRY LIMITED

Name of Corporation (if Applicable)                          Authorized Signatory                    Date

Huang Haibo , Chairman

Name, Title

On this _2_ day of _May_ _____, 2021, before me appeared _HUANG HAIBO_ (Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

黄 江/2                    (seal)

Attorney/Notary Public

Attorney/Notary is only certifying Borrower's signature

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BY LENDER**

ASTOR ASSET MANAGEMENT 3 LIMITED                    Authorized Signatory          05/27/2021

Name of Corporation                                                                                      Date

Andrii Shelelo, Managing Member

Name, Title

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BY DEALER**

Weiser Global Capital Markets Ltd.            Hong Yang              May 28, 2021

                                                               Authorized Signatory               Date

HONG YANG, DIRECTOR

Name, Title

Initials:  HH        A.S.        H.Y.
          Borrower   Lender     Dealer