# EXHIBIT N

**U.S. DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKSANA HRYN an individual and citizen of the Ukraine, YELYZAVETA LATA A/K/A ELIZAVETA LATA an individual and citizen of the Ukraine, IHOR USHENKO an individual and citizen of the Ukraine, VOLODYMYR HREN an individual and citizen of the Ukraine, ASTOR ASSET MANAGEMENT LTD., a corporation incorporated in St. Kitts and Nevis, ASTOR ASSET MANAGEMENT 1 LTD., a corporation incorporated in St. Kitts and Nevis, ASTOR ASSET MANAGEMENT 2 LTD., a corporation incorporated in St. Kitts and Nevis, ASTOR ASSET MANAGEMENT 3 LTD., a corporation incorporated in St. Kitts and Nevis, ASTOR ASSET MANAGEMENT 4 LTD., a corporation incorporated in St. Kitts and Nevis, ASTOR ASSET MANAGEMENT 7 LTD., a corporation incorporated in Anguilla, AMERICA 2030 CAPITAL LIMITED, a corporation incorporated in St. Kitts and Nevis, AMERICA 2030 CAPITAL 1 LIMITED, a corporation incorporated in St. Kitts and Nevis, AMERICA 2030 CAPITAL 2 LIMITED, a corporation incorporated in St. Kitts and Nevis, AMERICA 2030 CAPITAL 3 LIMITED, a corporation incorporated in St. Kitts and Nevis, AMERICA 2030 CAPITAL 4 LIMITED, a corporation incorporated in St. Kitts and Nevis, AMERICA 2030 CAPITAL 5 LIMITED, a corporation incorporated in St. Kitts and Nevis, ASTOR CAPITAL FUND LTD., a corporation incorporated in the Bahamas, BENTLEY ROTHSCHILD CAPITAL LIMITED, a corporation incorporated in St. Kitts and Nevis, BENTLEY ROTHSCHILD CAPITAL 1 LIMITED, a corporation incorporated in St. Kitts and Nevis, BENTLEY ROTHSCHILD CAPITAL 2 LIMITED, a corporation incorporated in St. Kitts and Nevis, BENTLEY ROTHSCHILD CAPITAL 3 LIMITED, a corporation incorporated in St. Kitts and Nevis, BENTLEY ROTHSCHILD CAPITAL 4 LIMITED, a corporation | Case No.: <br><br> **VERIFIED COMPLAINT FOR DAMAGES, PUNITIVE DAMAGES, AND REQUEST FOR INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

incorporated in St. Kitts and Nevis, BLACKROCK CAPITAL LLC, a corporation incorporated in the Bahamas, SAL OPPENHEIM LTD., a corporation incorporated in Seychelles, BEAR STERNS COMPANIES, a corporation incorporated in Seychelles, BENTLEY BRONFMAN CAPITAL LTD., a corporation incorporated in Belize, DREYFUS CORPORATION, a corporation incorporated in Belize, LINCOLN CAPITAL LTD., a corporation incorporated in Belize, NEWBURGH CAPITAL LTD., a corporation incorporated in Belize, SOVEREIGN LIQUIDITIY FUND, LTD., a corporation incorporated in Alaska, SOVEREIGN LIQUIDITY FUND, COMPANY 1 LTD., a corporation incorporated in Alaska, SOVEREIGN LIQUIDITY FUND, COMPANY 2 LTD., a corporation incorporated in Alaska, SOVEREIGN LIQUIDITY FUND, COMPANY 3 LTD., a corporation incorporated in Alaska, STATE STREET GLOBAL ADVISORS LTD., a corporation incorporated in the Bahamas, UNION PACIFIC CAPITAL LTD., a corporation incorporated in Belize, AC CAPITAL LIMITED, a corporation incorporated in Anguilla, BSC CAPITAL LTD., a corporation incorporated in Belize, CORNELIUS VANDERBILT CAPITAL MANAGEMENT LTD., a corporation incorporated in Belize, and AURELIUS CAPITAL MANAGEMENT LTD., a corporation incorporated in Belize

Plaintiffs,

v.

WEISER GLOBAL CAPITAL MARKETS LTD., a Bahamas private limited company, CHRISTOS LIVADAS a/k/a CHRIS LIVAS, in his official capacity and individually, a citizen of Canada and permanent resident of the Bahamas, HONG "RAINBOW" YANG, an individual and citizen of Hong Kong, CHRIS PAPAIOANNOU a/k/a CHRISTOS PAPAIOANNOU, an individual, COURTNEY FILIPENKO, an individual, RAHUL KIRPALANI, an individual, SELBY

BRICE, an individual, JOSE MARMOLEJO, an individual, JAMAAL STUBBS an individual and citizen of the Bahamas, WEISER GLOBAL ASSET MANAGEMENT, a corporation incorporated in the Bahamas, WEISER ASSET MANAGEMENT, a corporation incorporated in the Bahamas, and DOES 1-20.
                    Defendants.

Plaintiffs OXSANA HRYN ("Ms. Hryn"), ELIZABETA LATA ("Ms. Lata"), "IHOR USHENKO ("Mr. Ushenko") and VOLODYMYR HREN ("Mr. Hren") (collectively referred to herein as "Individual Plaintiffs") and ASTOR ASSET MANAGEMENT LTD., ASTOR ASSET MANAGEMENT 1 LTD., ASTOR ASSET MANAGEMENT 2 LTD., ASTOR ASSET MANAGEMENT 3 LTD., ASTOR ASSET MANAGEMENT 4 LTD., ASTOR ASSET MANAGEMENT 7 LTD., AMERICA 2030 CAPITAL LIMITED, AMERICA 2030 CAPITAL 1 LIMITED, AMERICA 2030 CAPITAL 2 LIMITED, AMERICA 2030 CAPITAL 3 LIMITED, AMERICA 2030 CAPITAL 4 LIMITED, AMERICA 2030 CAPITAL 5 LIMITED, ASTOR CAPITAL FUND LTD., BENTLEY ROTHSCHILD CAPITAL LIMITED, BENTLEY ROTHSCHILD CAPITAL 1 LIMITED, BENTLEY ROTHSCHILD CAPITAL 2 LIMITED, BENTLEY ROTHSCHILD CAPITAL 3 LIMITED, BENTLEY ROTHSCHILD CAPITAL 4 LIMITED, BLACKROCK CAPITAL LLC, SAL OPPENHEIM LTD., BEAR STERNS COMPANIES, BENTLEY BRONFMAN CAPITAL LTD., DREYFUS CORPORATION, LINCOLN CAPITAL LTD., NEWBURGH CAPITAL LTD., SOVEREIGN LIQUIDITIY FUND, LTD., SOVEREIGN LIQUIDITY FUND, COMPANY 1 LTD., SOVEREIGN LIQUIDITY FUND, COMPANY 2 LTD., SOVEREIGN LIQUIDITY FUND, COMPANY 3 LTD., STATE STREET GLOBAL ADVISORS LTD., UNION PACIFIC CAPITAL LTD., AC CAPITAL LIMITED, BSC CAPITAL LTD., CORNELIUS

VANDERBILT CAPITAL MANAGEMENT LTD., and AURELIUS CAPITAL MANAGEMENT LTD. (collectively, "Corporate Plaintiffs") (Collectively, "Plaintiffs") bring this Action against Defendants WEISER GLOBAL CAPITAL MARKETS LTD., WEISER GLOBAL ASSET MANAGEMENT, WEISER ASSET MANAGEMENT (collectively, "Weiser"), CHRISTOS LIVADAS a/k/a CHRISTOS LIVAS ("Mr. Livadas"), HONG "RAINBOW" YANG ("Mr. Yang"), CHRIS PAPAIOANNOU a/k/a CHRISTOS PAPAIOANNOU ("Mr. Papaioannou"), COURTNEY FILIPENKO ("Mr. Filipenko"), RAHUL KIRPALANI ("Mr. Kirpalani"), SELBY BRICE ("Mr. Brice"), JOSE MARMOLEJO ("Mr. Marmolejo"), and JAMAAL STUBBS ("Mr. Stubbs") (collectively, the "Individual Defendants" (collectively referred to herein as "Defendants") for breach of contract, fraudulent misrepresentations, negligent misrepresentation, fraudulent concealment, unjust enrichment, breach of the implied covenant of good faith and fair dealing, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil conspiracy, aiding and abetting civil conspiracy, conversion, breach of fiduciary duties, demand for an accounting, and piercing the corporate veil, along with punitive damages. In support of the Complaint based on their knowledge and otherwise on information and belief, the Plaintiffs herein allege as follows:

## I. PRELIMINARY STATEMENT

1.     This Action arises out of Defendants' egregious, malicious and fraudulent fleecing of the Plaintiffs funds, which Plaintiffs, as lenders and beneficial owners of over Fifty (50) depository accounts held with Defendant Weiser, a purported reputable International Broker-Dealer and custodian for global transactions, have been wrongly victimized to the cumulative sum of nearly FOUR HUNDRED FIFTY MILLION DOLLARS ($450,000,000.00) constituting collateralized shares and cash, all of which has been nefariously misappropriated

and converted by Defendant Livadas through his Company, Weiser. Upon information and belief, Mr. Livadas, Weiser and the other individual Defendants, all of whom are, upon information and belief, directors/officers of Defendant Weiser, have perpetuated a colossal fraud upon the Plaintiffs, regulators and global banks in which Weiser maintains depository accounts across the world, the size of which has not been seen since the fall of Bernard Madoff.

2. Mr. Livadas and Weiser are no strangers to fraud, as upon information and belief, they have been directly implicated in a massive dishonorable scheme to defraud Cayman Island investors and borrowers out of approximately Five Hundred Million Dollars ($500,000,000.00) according to the Cayman Island Monetary Authority ("CIMA").

3. Moreover, Mr. Livadas has a reputation for misappropriating client funds as set forth in other litigations filed in the United States Court System, including a recent filing in the Federal District Courts of Nevada. This dishonorable conduct is not limited to failing to return funds, as, upon information and belief, Mr. Livadas has played a significant role in laundering money through Defendant Weiser and/or other sham entities set up for the deleterious and illegal transfer of funds.

4. Further, and upon information and belief, Mr. Livadas touts himself as an "asset protection specialist," and brags about his ability to ensure monies and funds can be transferred, broken-up, distributed and hidden amongst multiple sham entities all across the globe. This allows him to utilize these sham entities to take advantage of those who entrust him/his companies/officers etc. with their resources.

5. In the matter presently before the Court, the Individual Plaintiffs are Lenders and the beneficial owners ("Beneficial Owners") of the corporate Plaintiffs set forth above ("Corporate Entities").

6. The Beneficial Owners, through their Corporate Entities, all have one thing in common: they issue stock-loans in favor of borrowers, all of whom are individual officers owning shares in publicly traded corporations ("Borrowers").

7. In order to induce the Lenders to issue loans to these Borrowers, the Borrowers pledge their shares as collateral (the "Pledged Collateral") in order to obtain funds from the Lenders.

8. Between the period of November 2018 and October 2021, the Beneficial Owners, through their respective Corporate Entities, all retained Weiser as the custodian whose responsibility was to, *inter alia* (i) receive Pledged Collateral of the Borrowers; (ii) receive and remit the cash loans from Lenders to the Borrowers (the "Loan Proceeds"); (iii) manage the cash and stock considerations via various depository accounts set up by Weiser in banks in both New York and across the world, including the likes of Citibank, BNY Mellon and HSBC (the "Depository Accounts"); and (iv) sell/trade shares of stock and maintain cash proceeds in accordance with the instructions of the Lenders in order to protect the Lenders' security interests and/or their obligations to the Borrowers.

9. The amounts held in the Depository Accounts are held for the benefit of the Plaintiffs, and only the Beneficial Owners of the Corporate Entities have authority to direct, authorize and conduct transactions via the Custodian, Weiser. Therefore, the Plaintiffs are supposed to have complete control of the assets and cash considerations held in the Depository Accounts for the Plaintiffs' benefit.

10. Yet, in contumacious disregard of all of the Plaintiffs' rights, in or around September of 2021, Defendants, via Livadas, began to sell shares of the Plaintiffs' collateral

and otherwise remove cash considerations belonging to the Plaintiffs out of the Depository Accounts without any authority or instruction to do so.

11.     When Plaintiff Beneficial Owners contacted Defendants in order to inquire about what was taking place, their inquiries were entirely neglected despite the fact that the Depository Accounts continued to show diminishing balances in excess of tens of millions of dollars, sometimes in a single day.

12.     In total *nearly Two Hundred Ninety Million Dollars ($290,000,000.00) in cash and approximately One Hundred Fifty Million Dollars ($150,000,000.00) in securities has vanished from the Plaintiffs' Depository Accounts within a period of days without explanation*, and without any ability by the Plaintiffs to gain access to same.

13.     Plaintiffs have sent numerous Entitlement Orders to the Defendants demanding a release of the funds and assets, but these demands have been entirely ignored by the Defendants.

14.     Defendants have once again perpetuated a fraudulent scheme, this time upon the Plaintiffs.  They have utilized their registered status as "International Broker Dealer" to gain the trust of the Plaintiffs, arrange custodial agreements, transfer Plaintiffs' funds to numerous depository accounts in New York, the United States at large, and countries such as China, Malaysia, Hong Kong, Singapore, and, when the timing was suitable to Defendants, initiated their intentional fraudulent scheme to convert all of the cash/stock considerations, owned by the Plaintiffs, for their own personal gain.

15.     There is a grave concern that if all Depository Accounts associated with Defendant Weiser are not attached, and injunctions enjoining the transfer of shares are not

obtained, the Plaintiffs' remaining security interests and cash considerations will be entirely misappropriated, rendering any judgment against the Defendants without any practical effect.

## II. JURISDICTION

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Parties are of diverse citizenship and the amount in question exceeds $75,000, exclusive of interest and costs.

17.     This Court also has subject matter jurisdiction over this action pursuant to 18 U.S.C.A. § 1964.

18.     This Court further has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

19.     This Court has specific jurisdiction over Defendants because all Defendants have sufficient minimum contacts with the forum district in a manner that pertains specifically to the activities and transactions at issue in this action.

20.     This Court has *in rem* jurisdiction because the Defendants have property/assets within the State, some of which pertains specifically to the activities and transactions at issue in this action.

## III. PARTIES

21.     Plaintiff OKSANA HRYN, an individual and citizen of the Ukraine.

22.     Plaintiff YELYZAVETA LATA a/k/a ELIZAVETA LATA, an individual and citizen of the Ukraine.

23.     Plaintiff IHOR USHENKO, an individual and citizen of the Ukraine.

24.     Plaintiff VOLODYMYR HREN, an individual and citizen of the Ukraine.

25.     Plaintiff ASTOR ASSET MANAGEMENT LTD, a corporation incorporated in St. Kitts and Nevis.

26.     Plaintiff ASTOR ASSET MANAGEMENT 1 LTD, a corporation incorporated in St. Kitts and Nevis.

27.     Plaintiff ASTOR ASSET MANAGEMENT 2 LTD, a corporation incorporated in St. Kitts and Nevis.

28.     Plaintiff ASTOR ASSET MANAGEMENT 3 LTD, a corporation incorporated in St. Kitts and Nevis.

29.     Plaintiff ASTOR ASSET MANAGEMENT 4 LTD, a corporation incorporated in St. Kitts and Nevis.

30.     Plaintiff ASTOR ASSET MANAGEMENT 7 LTD, a corporation incorporated in Anguilla.

31.     Plaintiff AMERICA 2030 CAPITAL LIMITED, a corporation incorporated in St. Kitts and Nevis.

32.     Plaintiff AMERICA 2030 CAPITAL 1 LIMITED, a corporation incorporated in St. Kitts and Nevis.

33.     Plaintiff AMERICA 2030 CAPITAL 2 LIMITED, a corporation incorporated in St. Kitts and Nevis.

34.     Plaintiff AMERICA 2030 CAPITAL 3 LIMITED, a corporation incorporated in St. Kitts and Nevis.

35.     Plaintiff AMERICA 2030 CAPITAL 4 LIMITED, a corporation incorporated in St. Kitts and Nevis.

36.     Plaintiff AMERICA 2030 CAPITAL 5 LIMITED, a corporation incorporated in St. Kitts and Nevis.

37.     Plaintiff ASTOR CAPITAL FUND LTD., a corporation incorporated in the Bahamas.

38.     Plaintiff BENTLEY ROTHSCHILD CAPITAL LIMITED, a corporation incorporated in St. Kitts and Nevis.

39.     Plaintiff BENTLEY ROTHSCHILD CAPITAL 1 LIMITED, a corporation incorporated in St. Kitts and Nevis.

40.     Plaintiff BENTLEY ROTHSCHILD CAPITAL 2 LIMITED, a corporation incorporated in St. Kitts and Nevis.

41.     Plaintiff BENTLEY ROTHSCHILD CAPITAL 3 LIMITED, a corporation incorporated in St. Kitts and Nevis.

42.     Plaintiff BENTLEY ROTHSCHILD CAPITAL 4 LIMITED, a corporation incorporated in St. Kitts and Nevis.

43.     Plaintiff BLACKROCK CAPITAL LLC, a corporation incorporated in the Bahamas.

44.     Plaintiff SAL OPPENHEIM LTD., a corporation incorporated in Seychelles.

45.     Plaintiff BEAR STEARNS COMPANIES, a corporation incorporated in Seychelles.

46.     Plaintiff BENTLEY BRONFMAN CAPITAL LTD., a corporation incorporated in Belize.

47.     Plaintiff DREYFUS CORPORATION, a corporation incorporated in Belize.

48.     Plaintiff LINCOLN CAPITAL LTD., a corporation incorporated in Belize.

49.     Plaintiff NEWBURGH CAPITAL LTD., a corporation incorporated in Belize.

50.     Plaintiff SOVEREIGN LIQUIDITY FUND, LTD., a corporation incorporated in Alaska.

51.     Plaintiff SOVEREIGN LIQUDITY FUND, COMPANY 1 LTD., a corporation located in Alaska.

52.     Plaintiff SOVEREIGN LIQUDITY FUND, COMPANY 2 LTD., a corporation located in Alaska.

53.     Plaintiff SOVEREIGN LIQUDITY FUND, COMPANY 3 LTD., a corporation located in Alaska.

54.     Plaintiff STATE STREET GLOBAL ADVISORS LTD., a corporation incorporated in the Bahamas.

55.     Plaintiff UNION PACIFIC CAPITAL LTD., a corporation incorporated in Belize.

56.     Plaintiff AC CAPITAL LIMITED, a corporation incorporated in Anguilla.

57.     Plaintiff BSC CAPITAL LIMITED, a corporation incorporated in Belize.

58.     Plaintiff CORNELIUS VANDERBILT CAPITAL MANAGMENET LTD., a corporation incorporated in Belize.

59.     Plaintiff AURELIUS CAPITAL MANAGEMENT LTD., a corporation incorporated in Belize.

60.     Defendant WEISER GLOBAL CAPITAL MARKETS, LTD., a private limited company in the Bahamas.

61.     Defendant CHRISTOS LIVADAS a/k/a CHRISTOS LIVAS, in his official capacity and individually, an individual, who is a citizen of Canada and permanent resident of the Bahamas.

62.     Defendant HONG "RAINBOW" YANG, an individual and citizen of Hong Kong.

63.     Defendant CHRIS PAPAIOANNOU, a/k/a CHRISTOS PAPAIOANNOU, an individual and, upon information and belief, a citizen of the Bahamas.

64.     Defendant COURTNEY FILIPENKO, an individual and, upon information and belief, a citizen of the Bahamas.

65.     Defendant SELBY BRICE, an individual and, upon information and belief, a citizen of the Bahamas.

66.     Defendant JOSE MARMOLEJO, an individual and, upon information and belief, citizen of the Bahamas.

67.     Defendant JAMAAL STUBBS, an individual and citizen of the Bahamas.

68.     Defendant WEISER GLOBAL ASSET MANAGEMENT, a corporation incorporated in the Bahamas.

69.     Defendant WEISER ASSET MANAGEMENT,  a corporation incorporated in the Bahamas

70.     Defendants DOES 1-20.

## IV. FACTUAL ALLEGATIONS

71.     The Plaintiff Beneficial Owners through their ownership in the Corporate Entities set forth above each entered into a Custodian Management Agreement ("CMA") with Weiser.  A copy of five (5) CMA Agreements, each entered into between a Corporate Entity

owned by one of the Beneficial Owners on the one hand, and Defendant Weiser on the other, are annexed hereto as **Exhibit "A."**[1]

72.    The CMA was entered into between the Lender (the Corporate Entities), the Borrower, and Weiser as Custodian. Weiser then was to facilitate the loan transaction.

73.    The CMAs very clearly outline the process of how the custodian relationship works. The CMAs all acknowledge that the Pledged Collateral of the Borrower shall be placed in one or more depository accounts which are maintained by the Borrower but ultimately held by the Custodian in favor of the Lender (the "Depository Accounts"). The Lender, in essence, has a lien and security interest in the Borrower's Account. *See* **Exhibit "A."**

74.    The Lender, in turn, deposits cash proceeds into a Depository Account for release to the Borrower, typically issued in tranches at the direction of the Lender (the Plaintiffs).

75.    In a multitude of CMAs, Weiser sets forth its vast network of banking counterparties which it designates to receive the Borrowers' Pledged Collateral. The CMA Agreements reference, *inter alia*, HSBC, CitiBank, Deutsche Bank, Maybank, UOB, BNY Mellon, Fidelity, or a Global Bank of similar class," or in other CMA's, "top tier multi-national banks." *See* **Exhibit "A"** at paragraphs 3.1.

76.    In accordance with the CMAs, The Lender, at all times, maintains a Depository Account with Weiser, and is the Party authorized to receive shares, as well as funds for top-up, and may otherwise conduct, transmit and engage in transfers, and receive the benefits of sale proceeds withdrawals. This includes all "proceeds of proceeds, cash, trades and other gains or takings derived during the term of the Loan." While instructions are provided by the Lenders

---

[1] While there are four beneficial owners (the Individual Plaintiffs) who have all signed a CMA with Defendant Wesier on behalf of at least one of each Individual Plaintiffs' respective CMA's, not all CMA's

to Weiser, the Custodian, the Lenders do not actually have direct access to these Depository Accounts and cannot, by way of example, withdraw funds without making a request to Weiser. **See Exhibit "A,"** paragraph 3.2 of the CMA's.

77. All of Weiser's CMA Agreements with the Plaintiffs contain a provision entitled "Control by Lender." Therein, Lender is given the authority to exercise "*all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Borrower, as the Principal Account holder.* ***The Parties further acknowledge that Lender reserves the right to direct the Custodian to comply with Entitlement Orders originated by Lender.*"** *See* **Exhibit "A,"** paragraphs 3, generally.

78. Each Beneficial Owner can view his/her custodian accounts ("Custodian Accounts") held with Weiser's Depository Accounts via Weiser's online database. These accounts represent the assets and cash-on hand related to specific stock-loan transactions through the Beneficial Owners' Corporate Entities. Via Weiser's online database, Lenders may track the amount of shares held in the Custodian Accounts and may note cash considerations and loan considerations contained therein, though they are never provided with direct access to the Custodian Accounts until and unless a given loan has defaulted. Upon such an occurrence, the Lenders issue an Entitlement Order to transfer cash and remaining securities to the Lenders respective accounts. Given the amount of trust and control placed in the hands of a custodian, the opportunity for fraud and fiduciary breaching conduct by less than reputable actors, and, in this instance, international scam-artists, is eminently realizable.

for each and every stock-loan transaction have been uploaded as Exhibits to this Complaint.

**The Fraudulent, Fiduciary Breaching Misappropriation of Plaintiffs' Assets and Cash Considerations**

79.     Beginning in or around September of 2021, Livadas, Weiser and the Defendants embarked on an extraordinary and malicious global campaign to, in sinister fashion, to deplete the Plaintiffs' Depository Accounts by (i) selling Plaintiffs' shares in the Custodian Accounts *without authorization or consent of the Plaintiffs* in direct violation of the CMAs; and (ii) transferring the Plaintiffs' cash-proceeds on-hand in the Custodian Accounts *without Entitlement Order authorization or consent of the Plaintiffs* in direct violation of the CMAs and in direct violation of regulations governing Broker Dealers.

80.     When Plaintiffs began to take note that their assets and cash proceeds were being misappropriated and/or converted by the Defendants, sometimes to the tune of tens of millions of dollars on a single day, each Plaintiff began sending Entitlement Orders to the Defendants' attention, which, pursuant to the Defendants' own CMAs, required Defendants to act in accordance with Plaintiffs' Entitlement Order instructions.

81.     Between the months of August and October of 2021, the Plaintiffs, via the Beneficial Owners, sent Entitlement Orders to Livadas, Weiser and the Defendants on multiple dates, demanding an accounting of the funds in each of the Plaintiffs' accounts, and, finally *demanding that the Defendants remit all funds remaining in the Custodian/Depository Accounts to the Plaintiffs.* A copy of written Entitlement Orders sent by Beneficial Owners Oksana Hryn, Elizaveta Lata, Ihor Ushenko and Volodymyr Hren, are annexed hereto as **Exhibit "B."**

82.     Upon information and belief, and instead of complying with the written Entitlement Orders as required under the CMA, the Defendants ignored the Plaintiffs' pleas and contractual rights.

83.   Lavidas and Defendants, who had by this time already diluted Plaintiffs' Depository Accounts by, upon information and belief, hundreds of millions,  then expedited the nature of the fraudulent conduct on Friday, October 8th, 2021, by locking the Plaintiffs out of their Weiser online database altogether, so that Plaintiffs had no access whatsoever to their Custodian Accounts and/or the proceeds contained therein.   A copy of screenshots of the Beneficial Owners' Accounts with Weiser on Wednesday, October 6th 2021, the last known date in which Plaintiffs had access to their accounts, showing cash balance in excess of One Hundred and Twenty Five Million Dollars ($125,000,000.00) cumulatively available to the Plaintiffs, is annexed hereto as **Exhibit "C";** a copy of screen shots from October 8th, 2021, showing the Beneficial Owners' failed login attempts is annexed hereto as **Exhibit "D."**

84.   When Defendants finally did reopen the Weiser online database to the Plaintiff Beneficial Owners, the results were shocking: for each Beneficial Owner, nearly all Custodian Accounts had vanished, with assets/proceeds entirely unaccounted for and missing in action. A copy of screenshots of the Beneficial Owners' Accounts with Weiser on Friday, October 8th 2021, following the lock-out, and showing a cumulative total balance of approximately Five Million Dollars ($5,000,000.00) available to the Plaintiffs, is annexed hereto as **Exhibit "E";**

*85.*   While the recent cash reduction in excess of One Hundred Twenty Five Million Dollars ($125,000,000.00) is significant, *in total, the amount of approximately Two Hundred and Ninety-Five Million Dollars ($295,000,000.00) belonging to the Plaintiffs has been misappropriated and converted by the Defendants without explanation and without any offering of recourse.* Screenshots from the Weiser online database showing proof of the Beneficial Owners' Custodian Account balances dated August of 2021, is annexed hereto as **Exhibit "F;"** letters from Weiser to the Beneficial Owners referencing Custodian Account

balances in excess of hundreds of millions of dollars each prior to August, 2021, is annexed hereto as **Exhibit "G;"** Spreadsheets submitted by Weiser in August and October of 2021 indicating the amount of cash proceeds available for the Plaintiffs, are annexed hereto as **Exhibit "H."[2]**

86.     On or about Spring of 2019, Livadas had set-up a DropBox requiring the Plaintiffs to upload all loan documents between Lenders and Borrowers to a shared Dropbox folder. The Plaintiffs for a period of 3 years uploaded all loan documents to the Dropbox as directed by Defendant Livadas. The loan documents contained the Master Loan Agreements ("MLA"), Custodian Management Agreement (CMA) any Addendums, the Closing Statements, Interest Statements and other documents pertaining to the loans granted by the Plaintiffs.

87.     Moreover, in addition to their complete avoidance of the Plaintiffs and without any advance warning, Defendants deleted all DropBox folders containing the underlying documents associated with the MLAs, the CMAs, and all documents contained therein with respect to the underlying Stock Loan Transactions, including Master Loan Agreements, Closing Statements, and related ancillary documents.

88.     In essence, the Defendants are attempting to eviscerate all information associated with the Custodian Accounts in the hope of successfully carrying out their intentional fraudulent scheme to defraud the Plaintiffs out of hundreds of millions of dollars due and owing to them. The total amount available to the Plaintiffs has been reduced from approximately Two Hundred and Ninety-Five Million Dollars ($295,000,000.00) in August of 2021 to just under Five Million Dollars ($5,000,000.00) as of today's date and approximately

---

[2] Due to privacy concerns and disclosure of sensitive information, all Exhibits referencing Custodian Accounts, Bank Accounts, Screen Shots of Weiser Databases containing account numbers, etc. are being

One Hundred Fifty Million Dollars ($150,000,000.00) in securities is missing. Absent immediate relief, this amount could easily be reduced to zero ($0.00).

**Defendant Weiser's Bank Transfers to Depository Accounts in New York**

89.    Upon information and belief, Weiser has knowingly availed itself of the laws of the State of New York, and the United States, through a systematic and continuous presence in the United States, by opening and funding Depository Bank Accounts in New York via international institutions, by trading on the New York Stock Exchange, and by previously wiring proceeds belonging to various Corporate Entities to the Beneficial Owners' attorney-in-fact, Singh Law P.A., located in New York, New York.  A copy of one such wire-transfer to the attention of a Beneficial Owners' Corporate Entity is annexed hereto as **Exhibit "I."**

90.    Various emails concerning a number of the Corporate Entities and Borrowers include correspondence from Weiser reference their global custodians out of New York. *See* Email from Weiser indicating that "Responses are coming much slower than usual, particularly from global custodians all of whom (ie out of New York) are working remotely," annexed hereto as **Exhibit "J."**

91.    Additional correspondence amongst Weiser, Borrowers and Corporate Entities lists names of U.S. banks such as Citibank, Fidelity, Chase etc. being utilized in various jurisdictions such as China (see **Exhibit "K.");** others contain explicit wiring instructions for the Borrowers/Corporate Entities to submit monies to a Citibank account in New York **("Exhibit "L"**).

92.    It is abundantly clear that the Defendants are transacting in U.S. dollars, utilizing a series of U.S. and New York banks for international depository accounts, and have,

submitted to the Court *In Camera* for inspection and review.

on multiple occasions, instructed the Borrowers/Corporate Entities herein to transfer funds to a Depository Account with Citibank in New York.

93.     Throughout the years, Livadas has represented to Defendants that he himself does not own assets; rather his assets are held in various trusts or managed by proxies. Upon information and belief, Defendants have converted  Two Hundred Ninety Million Dollars ($290,000,000.00) in cash and approximately One Hundred Fifty Million Dollars ($150,000,000.00) in securities and spread it across various trusts and sham proxy accounts – all to the detriment of the Plaintiffs herein.

### Injunctions Obtained in Other Jurisdictions

94.     Upon information and belief, and in other jurisdictions, various Borrowers with Defendant Weiser as Custodian have sought and/or obtained injunctive relief to attach assets in the jurisdictions within which their respective claims were filed. Upon information and belief, these actions ultimately have to do with the conduct of Weiser. Annexed hereto as **Exhibit "M"** are injunctions sought and/or obtained by Borrowers in Singapore and Hong Kong.

### An Injunction is Required

95.     Plaintiffs are the in the dire position of losing the entirety of the funds currently held with the Defendants in a fraudulent scheme not seen since the days of Bernard Madoff. Absent immediate injunctive relief (i) compelling Defendants to transfer all of the cash considerations left with Defendants to the Plaintiffs (ii) granting Plaintiffs supervision, management and control over Plaintiffs' security interests in Defendants' possession; (iii) attaching all individual and Custodian Bank Accounts associated with the Defendants, (iv) enjoining the Defendants from transacting in any way, transferring, disposing of, lending out,

rehypothecating, pledging, or mortgaging any and all the securities under Defendants control; (v) enjoining the Defendants from transacting in any way, transferring, disposing of, lending out, rehypothecating, pledging, or mortgaging any and all the securities pledged to Plaintiffs or owned by Borrowers of the Lenders; and (vii) enjoining the Defendants from transferring any cash, proceeds, proceeds of proceeds of Defendant bank accounts, the fraudulent scheme will continue, rendering any further judgment by this Court without any practical effect.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(All Defendants)**

96.     The Beneficial Owners via the Corporate Entities entered into CMA Agreements with the Defendants.

97.     Paragraph 1 of the CMAs specifically appoint Plaintiff Corporate Entities as the exclusive lien holders of the Borrowers' Pledged Collateral, and grant the Plaintiff Corporate Entities "full power and authority to do and perform all and every act and thing whatsoever requisite necessary to be done in transaction in the Pledged Collateral as fully, to all intents and purposes ,as could be done if personally present, with full power of substitution… ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Pledged Collateral"

98.     Paragraph 3 of the CMAs state that "Lenders [i.e. Corporate Entities'] scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the [Borrower]. **The Parties further acknowledge that Lender reserves the right to direct [Weiser] to comply with Entitlement**

1    **Orders originated by Lender."** Paragraph 3.2 states "the lender's lien and security interest

2    also includes all proceeds of the foregoing, and all proceeds of trades…"

3

4          99.      Beginning in August of 2021, the Beneficial Owners began sending Entitlement

5    Orders with respect to all of their Custodian/Depository Accounts held with Defendants.

6          100.     Defendants breached the CMAs by refusing to honor the demands of the

7    Entitlement Orders and refused to remit the assets/proceeds held with Defendant Weiser via

8    multiple Depository Accounts in international banking institutions, including accounts in New

9    York, the United States at large, and across the Globe, despite Plaintiffs' demands that their

10    assets/proceed/cash held by Defendants be immediately released.

11

12          101.     As a result, Plaintiffs have been injured in a cumulative amount in excess of

13    Four Hundred and Fifty Million Dollars ($450,000,000.00).

14 

**SECOND CAUSE OF ACTION**
**<u>Fraudulent Misrepresentation</u>**
**<u>(All Defendants)</u>**

15

16          102.     All of the above allegations are incorporated herein by reference.

17

18          103.     Defendants made false representations of material fact regarding their reputable

19    status, and made a multitude of misrepresentations concerning the authenticity of their business

20    practices, and their purported intent to safeguard the Plaintiffs assets/monies so that they could

21    dupe Plaintiffs into executing the CMAs and obtain Plaintiffs' stock and cash considerations,

22    which they transferred to Depository Accounts via international banking institutions in New

23    York, the United States at large, Singapore, Hong Kong, Malaysia, China and across the Globe.

24          104.     Defendants knew these statements were false when they were made, and they

25    had no intention of performing their obligations under the CMA Agreement.

26

27          105.     Defendants intended for Plaintiffs to rely on these false statements.

28

106.    Plaintiffs justifiably relied on the false statements when Plaintiffs performed their obligations under the CMAs, and ultimately ensured that Defendants collectively held nearly Two Hundred Ninety Million Dollars ($290,000,000.00) in monies and approximately One Hundred Fifty Million Dollars ($150,000,000.00) in securities belonging to them.

107.    The factual details of this illicit fraudulent conduct, including the details concerning Defendants' intentional conversion/removal of hundreds of millions of dollars belonging to Plaintiffs, without explanation, is in the sole possession of the Defendants.

108.    As a result of Defendants' fraudulent conduct, Plaintiffs have suffered damages in an amount to be determined at trial but not less than Four Hundred and Fifty Million Dollars ($450,000,000.00).

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**
**(All Defendants)**

109.    All of the above allegations are incorporated herein by reference.

110.    Upon information and belief, Defendants consistently provided false information for the purpose of manipulating Plaintiffs in order to ensure Plaintiffs' continued performance and agreement to leave the assets/monies belonging to Plaintiff in the custody of Defendants.

111.    Defendants falsely represented that they would manage, maintain, and safeguard the Pledged Collateral and all monies maintained in the Depository Bank Accounts. Defendants also falsely misrepresented their past conduct, claiming to be a reputable International Brokerage without a questionable background and/or any prior dealings related to fraud.

112.     Defendants failed to exercise reasonable care or competence when they relayed inaccurate information to the Plaintiffs regarding Defendants' management of the Depository Accounts and prior misconduct.

113.     As a result, Plaintiffs have suffered damages in an amount to be determined at trial but not less than Four Hundred and Fifty Million Dollars ($450,000,000.00).

**FOURTH CAUSE OF ACTION**
**<u>Fraudulent Concealment</u>**
**<u>(All Defendants)</u>**

114.     All of the above allegations are incorporated herein by reference.

115.     Defendants had a duty to disclose material information to Plaintiffs concerning their prior misconduct, as well as concerning the whereabouts of the monies and stock held by Defendants for the benefit of the Plaintiffs.

116.     Plaintiff Beneficial Owners all demanded an accounting and itemized information concerning the amounts and whereabouts of their proceeds associated with their Custodian Accounts – these demands were ignored and the information has been intentionally concealed from them.

117.     Plaintiffs acted in justifiable reliance on the Defendants' concealment when they performed under the CMA Agreements and submitted Entitlement Orders.

118.     Defendants are liable to Plaintiffs in an amount to be determined at trial believed to be not less than Four Hundred and Fifty Million Dollars ($450,000,000.00).

**FIFTH CAUSE OF ACTION**
**<u>UNJUST ENRICHMENT</u>**
**<u>(All Defendants)</u>**

119.     All of the above allegations are incorporated herein by reference.

120.    Plaintiffs conferred a benefit on Defendants when they entered into the CMAs so that Plaintiffs could earn management fees and manage the Pledged Collateral, monies, assets and proceeds in various Depository Accounts via international banking institutions in New York, the United States, Singapore, Hong Kong, Malausia, China and elsewhere across the Globe.

121.    Defendants knowingly received this benefit, and then, stole, converted and otherwise misappropriated nearly all of the stock/cash/assets/proceeds in the Depository Accounts in an amount to be determined at trial but believed to be not less than Four Hundred and Fifty Million Dollars ($450,000,000.00).

122.    Defendants retained the benefit of (i) Management Fees; and (ii) all of the stock/cash/assets/proceeds belonging to the Plaintiffs, and continue to enjoy the fruits of what belongs to the Plaintiffs to this day, and at Plaintiffs' expense.

123.    Defendants are liable to Plaintiffs in an amount to be determined at trial believed to be not less than Four Hundred and Fifty Million Dollars ($450,000,000.00).

## SIXTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (All Defendants)

124.    All of the above allegations are incorporated herein by reference.

125.    The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.

126.    Defendants entered into a Custodian Management Agreement where they were supposed to maintain stock/cash/assets/proceeds at the direction of the Plaintiffs.

127.    Defendants breached the covenant of good faith and fair dealing when Defendants failed to adhere to Entitlement Orders, failed to provide an accounting of assets on-hand in the Depository Accounts despite demands made by the Plaintiff Beneficial Owners on behalf of the Plaintiff Corporate Entities, and when Defendants intentionally and maliciously converted all of the cash/stock/proceeds/assets in the Depository Accounts for their own benefit, and refused to return same to Plaintiffs despite demands being made via multiple Entitlement Order Letters.

128.    Defendants were well aware of Plaintiffs' reasonable expectation that Plaintiffs would maintain control and direction over the cash/stock/proceeds/assets in the Depository Accounts and were well aware that the money stolen did not belong to them.

129.    Plaintiffs have been damaged in an amount to be determined at trial not less than Four Hundred and Fifty Million Dollars ($450,000,000.00).

**SEVENTH CAUSE OF ACTION**
**RICO Section 1962(a)**
**(All Defendants)**

130.    All of the above allegations are incorporated herein by reference.

131.    Weiser is an enterprise engaged in and whose activities affect interstate commerce.

132.    Defendants converted moneys that were derived from a pattern of racketeering activity in an interstate enterprise. Defendants have used the fraudulently obtained gains referenced above from Plaintiffs, as well as other victims, to, upon information and belief, create further entities, avoid payment to rightful owners and other creditors, and continue their illicit activities. In engaging in the conduct referenced herein and continuing to represent themselves as reputable International Broker-Dealers specializing in asset-protection,

Defendants continue to effectively mislead the public, create a false sense of confidence, and induce further investment in furtherance of the scheme.

133.    The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

134.    As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(a), Plaintiffs have been injured in their business and property in that in addition to the compensation exceeding Four Hundred Fifty Million Dollars ($450,000,000.00) owed by Defendants to Plaintiffs that Defendants converted and used in their scheme, the behavior above has damaged Plaintiffs' reputation in the industry and with Borrowers and/or prospective Borrowers who otherwise would have been interested in utilizing the Plaintiffs' services.

135.    In accordance with 18 U.S.C. § 1964(a), Plaintiffs seek an injunction to impose reasonable restrictions on Defendants' future activities, including Defendants' transfer of funds, assets, cash and/or securities/shares from the Depository and their individual Accounts.

136.    In accordance with 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, the costs of this suit, and reasonable attorneys' fees incurred.

### EIGHTH CAUSE OF ACTION
### RICO Section 1962(b)
### (All Defendants)

137.    All of the above allegations are incorporated herein by reference.

138.    Weiser is an enterprise engaged in and whose activities affect interstate commerce.

139.    Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Without the racketeering activities involving at the least mail and wire fraud, Defendants would not have been able to create and operate the

entities needed as well as continue to maintain their positions of leadership. As questions arose, Defendants used their ill-gotten gains to maintain their positions of leadership through a pattern of misrepresentation to the Plaintiffs, upon information and belief, other individuals/entities who left their funds with them, employees, service providers, other third parties, and the public at large.

140. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C.A. § 1961(5).

141. Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C.A. § 1962(b).

142. As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C.A. § 1962(b), Plaintiffs have been injured in their business and property in that, but for Defendants' racketeering activities allowing them to maintain interests and control in such entities, Plaintiffs otherwise would have been able to capitalize on their successful efforts by having the ability to continue having access, direction and control over hundreds of millions of dollars, and would have been able to continue to utilize their reputation, goodwill, and associated contacts on similar future projects, in addition to otherwise collecting the compensation exceeding Four Hundred Fifty Million Dollars ($450,000,000.00) owed by Defendants to Plaintiffs.

143. In accordance with 18 U.S.C. § 1964(a), Plaintiffs seek an injunction to impose reasonable restrictions on Defendants' future activities, including Defendants' transfer of funds, assets, cash and/or securities/shares from the Depository Accounts.

144. In accordance with 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, the costs of this suit, and reasonable attorneys' fees incurred.

### NINTH CAUSE OF ACTION
### RICO Section 1962(d)
### (All Defendants)

145.    All of the above allegations are incorporated herein by reference.

146.    As set forth above, Defendants agreed and conspired to violate 18 U.S.C.A. § 1962(a) (b) and (c). Specifically, Defendants acted in concert when they made a series of decisions. Through their own admissions in electronic mail and other communications to Plaintiffs (and other individuals) as well as filing documents bearing their signatures, Defendants consulted each other before and throughout the conspiracy to plan and execute many overt acts in pursuit of their common illicit goals.

147.    Defendants have intentionally conspired and agreed to directly and indirectly convert income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C.A. § 1962(d).

148.    As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C.A. § 1962(d), Plaintiffs have been injured in their business and property in that the compensation exceeding Four Hundred and Fifty Million Dollars ($450,000,000.00) owed by Defendants to Plaintiffs pursuant to the MCA's has been fraudulently withheld and converted for unlawful purposes.

149.     In accordance with 18 U.S.C. § 1964(a), Plaintiffs seek an injunction to impose reasonable restrictions on Defendants' future activities, including Defendants' transfer of funds, assets, cash and/or securities/shares from the Depository Accounts.

150.     In accordance with 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, the costs of this suit, and reasonable attorneys' fees incurred.

## TENTH CAUSE OF ACTION
### Civil Conspiracy
### (All Defendants)

151.     All of the above allegations are incorporated herein by reference.

152.     Since the first Plaintiff executed an MCA, the Defendants agreed and combined to engage in a conspiracy by creating a scheme to induce Plaintiffs to sign the MCA'S with an entity they planned to use as a platform to convert funds and proceeds, and distribute the cash/assets/stock/assets supposed to have been controlled by Plaintiffs, to unknown bank accounts in their individual and/or related entity names;

153.     Defendants, and each and every one of them, agreed and combined to engage in a civil conspiracy to commit the unlawful acts as described herein.

154.     Defendants, and each and every one of them, combined to engage in a civil conspiracy of which the principal element was to inflict wrongs against and injury on Plaintiffs and the public at large as described in this Complaint.

155.     Defendants, and each and every one of them, combined to engage in a civil conspiracy that was furthered by overt acts.

156.     Defendants, and each and every one of them, understood, accepted, or explicitly or implicitly agreed to the general objectives of their scheme to inflict the wrongs and injuries on the Plaintiffs.

157.    Defendants, and each and every one of them, acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and injury on Plaintiffs as described in this Complaint.

158.    Defendants, and each and every one of them, combined to engage in a scheme that was intended to violate the law, and Defendants concealed and secreted such violations

159.    Defendants, and each and every one of them, combined to engage in a scheme which was intended to violate the rights of Plaintiffs.

160.    Through their own admissions in electronic mail and other communications to Plaintiffs, as well as filing documents bearing their signatures, Defendants consulted each other before and throughout the conspiracy to plan and execute many overt acts in pursuit of their common illicit goals.

161.    Plaintiffs have been injured in an amount exceeding Four Hundred and Fifty Million Dollars  ($450,000,000.00) as a result of Defendants' conspiracy.

## ELEVENTH CAUSE OF ACTION
### Civil Conspiracy
### (All Defendants)

162.    All of the above allegations are incorporated herein by reference.

163.    Defendants committed overt acts of fraud and other unlawful conduct as described above.

164.    Defendants had knowledge of such fraud and other unlawful conduct.

165.    Defendants substantially assisted the perpetration of such fraud and other unlawful conduct.

166.    Plaintiffs were injured in an amount exceeding Four Hundred and Fifty Million Dollars ($450,000,000.00) as a result of Defendants' aiding and abetting of the commercial misconduct delineated above.

## TWELFTH CAUSE OF ACTION
### Conversion
### (All Defendants)

167.    All of the above allegations are incorporated herein by reference.

168.    The Parties entered into a Custodian Management Agreement ("CMA").

169.    Defendants intended to, and did, interfere with Plaintiffs' right to access and/or receive proceeds and funds due and owing under the CMA.

170.    Plaintiffs have a right to possession of the funds, namely the more than Two Hundred and Ninety-Five Million Dollars ($295,000,000.00) and securities in the approximate amount of One Hundred Fifty Million Dollars ($150,000,000.00) that Plaintiffs have transferred into their own bank accounts and their whereabout is unknown.

171.    Plaintiffs were injured in an amount exceeding Four Hundred and Fifty Million Dollars ($450,000,000.00) as a result of Defendants' conversion delineated above.

## THIRTEENTH CAUSE OF ACTION
### Breach of Fiduciary Duties
### (All Defendants)

172.    All of the above allegations are incorporated herein by reference.

173.    At all relevant times herein, the parties were subject to the Custodian Management Agreement

174.    At all relevant times herein, Defendants had a fiduciary duty to Plaintiffs out of their role as defined in the agreement.

175.    Defendants breached their fiduciary duties by, *inter alia*, failing to adhere to Entitlement Orders, failing to provide an accounting of assets on-hand in the Depository Accounts

despite demands made by the Plaintiff Beneficial Owners on behalf of the Plaintiff Corporate Entities, intentionally and maliciously converting all of the cash/stock/proceeds/assets in the Depository Accounts for their own benefit, and refusing to return same to Plaintiffs despite demands being made via multiple Entitlement Order Letters.

176.    Plaintiffs were injured in an amount exceeding Four Hundred and Fifty Million Dollars ($450,000,000.00) as a result of Defendants' breach of fiduciary duties delineated above.

## FOURTEENTH CAUSE OF ACTION
### Accounting
### (All Defendants)

177.    All of the above allegations are incorporated herein by reference.

178.    Defendants had and have a fiduciary relationship with, and obligations to, Plaintiffs.

179.    As a consequence thereof and in reliance on their promise to fulfill such obligations, Defendants were entrusted with funds, assets, and interests of Plaintiffs.

180.    Rather than using the tangible and intangible assets entrusted to them consistent with obligations to, and for the benefit of, Plaintiffs, Defendants used same for the benefit of themselves.

181.    Through such actions, Defendants have unjustly enriched themselves at the expense of Plaintiffs and breached fiduciary and other duties and obligations to Plaintiffs.

182.    Because Defendants ill-gotten gains and unjust enrichment have come through use of assets entrusted to them for other purposes, any gains, revenue, income, profit, or the like derived therefrom is, and should be, for the benefit of Plaintiffs, and Defendants should be ordered to account for same to Plaintiffs and to disgorge same to Plaintiffs.

## FIFTEENTH CAUSE OF ACTION
### Piercing the Corporate Veil
### (All Defendants)

183.    All of the above allegations are incorporated herein by reference.

184.    As alleged above, Defendants grossly abused the various corporate firms listed as Corporate Defendants, flagrantly disregarding corporate formalities, in the pursuit of fraudulent and wrongful misconduct, and thus frustrating the legitimate expectations of Plaintiffs who regarded the Corporate Defendants as a legitimate financial institutions rather than as a scam operated for the exclusive benefit of the Individual Defendants.

185.    The Individual Defendants are thus personally liable to Plaintiffs for all damages pleaded herein.

## **Punitive Damages**

186.    The conduct of Defendants described above is outrageous. Defendants' conduct demonstrates a conscious disregard for public safety by a regulated financial institution. The acts and omissions described above were willful and performed with actual or implied malice. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

## **V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to enter Judgment against Defendants as follows:

A.    Compensatory damages in the amount of Two Hundred and Ninety-Five Million Dollars ($295,000,000.00) or such greater amount as is determined by the Jury;

B.    Treble damages in the amount of Eight Hundred Eighty-Five Million Dollars ($885,000,000.00);

C.    Return of securities worth approximately One Hundred Fifty Million Dollars ($150,000,000.00);

D.    Punitive damages in the amount of Fifty Million ($50,000,000.00) or the maximum amount allowed by law;

E.       Injunctive relief in accordance with Title 18 U.S.C. § 1964 and New York law;

F.       Prejudgment interest at the maximum rate allowed by law;

G.      Post-judgment interest on the principal sum of the Judgment entered against Defendants from the date of Judgment until paid;

H.      An accounting of all revenue, whereabout of all Two Hundred and Ninety-Five Million Dollars ($295,000,000.00) in monies and approximately One Hundred Fifty Million Dollars ($150,000,000.00) in missing Plaintiff's securities, whereabout sale of all Plaintiffs securities, whereabout sale of Borrowers securities, their transfer, all proceeds, profits, or any other financial gain attributable to Defendants' unlawful acts as alleged herein from the year 2018, 2019, 2020 and 2021;

I.       Attorneys' Fees, Expert Witness Fees, and Costs;

J.      Such other relief as is just and proper.


**TRIAL BY JURY IS DEMANDED**


Dated: October 12ᵗ, 2021
       New York, New York

                                 **ROSS PITCOFF LAW**

                                 /s/Ross E. Pitcoff

                                 Ross E. Pitcoff
                                 Ross Pitcoff Law
                                 250 Park Avenue, 7th Floor
                                 New York, New York 10177
                                 (646) 580-3204
                                 ross@rosspitcofflaw.com

                                 **CRISCIONE RAVALA, LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ M. Salman Ravala
M. Salman Ravala, Esq.
250 Park Avenue, 7th Floor
New York, NY 10177
T: (212) 920-7142
F: (800) 583-1787
E: SRavala@lawcrt.com
*Attorneys for Plaintiffs*

**VERIFICATION**

VOLODYMYR HREN, being duly sworn, deposes and says:  I am a principal of

SOVEREIGN LIQUIDITY FUND, LTD, SOVEREIGN LIQUIDITY FUND
COMPANY 1 LTD, SOVEREIGN LIQUIDITY FUND COMPANY 2 LTD,
SOVEREIGN LIQUIDITY FUND, COMPANY 3 LTD, and AURELIUS
CAPITAL MANAGEMENT LTD

the Plaintiffs in the within action. I have read the foregoing Complaint, and its factual contents
are true to my personal knowledge, except as to the matters therein stated to be alleged on
information and belief, and as to those matters, I believe it to be true.

_____
VOLODYMYR HREN

1   **VERIFICATION**

2

3

4       IHOR USHENKO, being duly sworn, deposes and says:  I am a principal of

5   BEAR STERNS COMPANIES, BENTLEY BRONFMAN CAPITAL LTD, DREYFUS
    CORPORATION, LINCOLN CAPITAL LTD, NEWBURGH CAPITAL LTD, SOVEREIGN
6   LIQUIDITY FUND, LTD, SOVEREIGN LIQUIDITY FUND, COMPANY 1 LTD,
    SOVEREIGN LIQUIDITY FUND COMPANY 2 LTD, SOVEREIGN LIQUIDITY FUND
7   COMPANY 3 LTD, STATE STREET GLOBAL ADVISORS LTD, and UNION PACIFIC
    CAPITAL LTD
8

9

10

11  the Plaintiffs in the within action. I have read the foregoing Complaint, and its factual contents
    are true to my personal knowledge, except as to the matters therein stated to be alleged on
12  information and belief, and as to those matters, I believe it to be true.

13

14

15                                                           _____

16                                                    IHOR USHENKO

17

18

19

20

21

22

23

24

25

26

27

28

1  **VERIFICATION**

2

3      YELYZAVETA LATA, being duly sworn, deposes and says:  I am a principal of

4  ASTOR ASSET MANAGEMENT LTD, ASTOR ASSET MANAGEMENT 1 LTD,
   ASTOR ASSET MANAGEMENT 2 LTD, ASTOR ASSET MANAGEMENT 3 LTD

5  ASTOR ASSET MANAGEMENT 4 LTD, ASTOR ASSET MANAGEMENT 7 LTD
   AMERICA 2030 CAPITAL LIMITED, AMERICA 2030 CAPITAL 1 LIMITED,

6  AMERICA 2030 CAPITAL 2 LIMITED, AMERICA 2030 CAPITAL 3 LIMITED,
   AMERICA 2030 CAPITAL 4 LIMITED, AMERICA 2030 CAPITAL 5 LIMITED,

7  ASTOR CAPITAL FUND LTD, BENTLEY ROTHSCHILD CAPITAL LIMITED,
   BENTLEY ROTHSCHILD CAPITAL 1 LIMITED, BENTLEY ROTHSCHILD

8  CAPITAL 2 LIMITED, BENTLEY ROTHSCHILD CAPITAL 3 LIMITED,
   BENTLEY ROTHSCHILD CAPITAL 4 LIMITED, BLACKROCK CAPITAL LLC,

9  and SAL OPPENHEIM LTD

10  the Plaintiffs in the within action. I have read the foregoing Complaint, and its factual contents

11  are true to my personal knowledge, except as to the matters therein stated to be alleged on
   information and belief, and as to those matters, I believe it to be true.

12

13

14

15  _____

16  YELYZAVETA LATA

17

18

19

20

21

22

23

24

25

26

27

28

1

**VERIFICATION**

2

3     OKSANA HRYN, being duly sworn, deposes and says:  I am a principal of

4     AC CAPITAL, LTD, BSC CAPITAL, LTD and CORNELIUS VANDERBILT CAPITAL
      MANAGEMENT, LTD

5

6

7

8     the Plaintiffs in the within action. I have read the foregoing Complaint, and its factual contents

9     are true to my personal knowledge, except as to the matters therein stated to be alleged on
      information and belief, and as to those matters, I believe it to be true.

10

11

12

13

14     _____

15                OKSANA HRYN

16

17

18

19

20

21

22

23

24

25

26

27

28